VINCENT MCGUIRE *v.* LUCIA B. MCGUIRE
(AC 27624)

McLachlan, Harper and Stoughton, Js.

Argued March 14—officially released June 26, 2007

*Gary Traystman*, for the appellant (plaintiff).

*Lucia B. McGuire*, pro se, the appellant (defendant).

*Opinion*

McLACHLAN, J. The plaintiff, Vincent McGuire, appeals from the trial court's ruling on his postjudgment motion for contempt. The plaintiff claims that the court (1) was biased and prejudiced against him and acted

as an advocate for the pro se defendant, Lucia B. McGuire, (2) improperly permitted a real estate agent to give opinion testimony without having been qualified as an expert witness and (3) ordered a remedy that was contrary to the law and facts of the case. We affirm the judgment of the trial court.

The parties were married on November 5, 1994. On November 19, 2004, the marriage was dissolved on the ground of irretrievable breakdown. In the dissolution decree, an agreement between the parties was incorporated that provided, inter alia, that the marital home was to be sold as soon as possible and the net proceeds to be divided equally between the parties after the deduction of usual and customary closing costs. The decree further provided that the court would retain jurisdiction with regard to the sale of the marital home.

On December 30, 2004, the plaintiff filed a postjudgment motion for contempt. That motion was resolved by an agreement, signed by the parties and approved by the court on January 31, 2005, which provided that an additional $2456 would be paid to the plaintiff from the defendant's share of the proceeds from the sale of the marital home. On January 25, 2006, the plaintiff filed another motion for contempt, claiming that the defendant had refused an offer to purchase the marital home in violation of the order in the dissolution decree. A hearing was held on April 10, 2006, at which time the plaintiff was represented by counsel and the defendant proceeded pro se.

In opening remarks, the plaintiff's counsel claimed that the basis for the motion for contempt was the defendant's successful efforts in sabotaging the contract to purchase the marital home signed in May, 2005, and her subsequent refusal to place the property on the market or to execute a listing agreement in a timely manner. The parties and a real estate agent testified at

the hearing, and the plaintiff submitted several exhibits as evidence. At the conclusion of the hearing, the court found that the defendant had not sabotaged the May, 2005 contract. The court also found, however, that she had delayed the process of selling the property, although not substantially, and concluded that the plaintiff was entitled to a credit of $4000.[1] This appeal followed.

The plaintiff claims that the court essentially found the defendant's conduct to be contemptuous, although it did not expressly state that she was in contempt of the court's order, relative to the sale of the marital property, and that it abused its discretion in ordering a remedy or sanction against her that was illogical in light of the testimony presented at the hearing. "A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in failing to find that the actions or inactions of the [party] were in contempt of a court order. To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt." (Internal quotation marks omitted.) *Adams* v. *Adams*, 93 Conn. App. 423, 431, 890 A.2d 575 (2006).

I

The plaintiff first claims that the court became an advocate for the pro se defendant and entered an order that clearly demonstrated its bias in favor of the defendant and against him. In support of that argument, the plaintiff claims that the court questioned witnesses in

---

[1] The court took note of the parties' previous agreement under which the plaintiff was entitled to a credit of $2456. It "rounded up" that figure to $4000 because of the delay caused by the defendant and indicated that the balance of the proceeds from the sale was then to be divided equally between the parties. At the time of the hearing, a new contract had been signed for the sale of the marital home.

order to elicit testimony prejudicial to him and interrupted the objections made by his counsel.

The plaintiff did not raise a claim of judicial bias at any time during the course of the hearing. He could have requested that the judge recuse himself. "Claims alleging judicial bias should be raised at trial by a motion for disqualification or the claim will be deemed to be waived. . . . A party's failure to raise a claim of disqualification at trial has been characterized as the functional equivalent of consenting to the judge's presence at trial." (Citation omitted; internal quotation marks omitted.) *Wendt* v. *Wendt*, 59 Conn. App. 656, 692, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000).

Instead, the plaintiff waited until after the court made its ruling. "Our Supreme Court has criticized the practice whereby an attorney, cognizant of circumstances giving rise to an objection before or during trial, waits until after an unfavorable judgment to raise the issue. We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial." (Internal quotation marks omitted.) Id., 693. On that basis alone, the plaintiff's claim of judicial bias must fail.

We will address the plaintiff's claim in substance, however, given the grave nature of his accusation. "Because an accusation of judicial bias or prejudice strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary . . . we . . . have reviewed unpreserved claims of judicial bias under the plain error doctrine. . . . Plain error exists only in truly extraordinary situations where the existence of the error is so obvious that it

affects the fairness and integrity of and public confidence in the judicial proceedings." (Citation omitted; internal quotation marks omitted.) *Doody* v. *Doody*, 99 Conn. App. 512, 523, 914 A.2d 1058 (2007).[2]

Canon 3 (c) (1) of the Code of Judicial Conduct provides in relevant part: "A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (A) the judge has a personal bias or prejudice concerning a party . . . ." The plaintiff is not required to demonstrate actual bias in order to prevail on a claim of a violation of that canon. The plaintiff will meet his burden if he can prove that the conduct in question gave rise to a reasonable appearance of impropriety. *Burton* v. *Mottolese*, 267 Conn. 1, 30, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004).

"We use an objective rather than a subjective standard in deciding whether there has been a violation of canon 3 (c) (1). Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification. Thus, an impropriety or the appearance of impropriety . . . that would reasonably lead one to question the judge's impartiality in a given proceeding clearly falls within the scope of the general standard . . . . The question is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his . . . impartiality, on the basis of all of the circumstances." (Internal quotation marks omitted.) Id.

[2] Although the plaintiff did not explicitly request plain error review, he does cite *Cameron* v. *Cameron*, 187 Conn. 163, 444 A.2d 915 (1982), in support of his claim. That court addressed a claim of judicial bias under the plain error doctrine.

It is the plaintiff's claim that the court acted as an advocate for the pro se defendant. This is evidenced, he argues, by the court's questioning of various witnesses to elicit testimony favorable to the defendant and by the court's interruptions of the plaintiff's counsel when he attempted to make objections during the course of the hearing. "[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party." (Internal quotation marks omitted.) *Carr* v. *Fleet Bank*, 73 Conn. App. 593, 595–96, 812 A.2d 14 (2002). Nevertheless, "[w]hile a judge trying a case in which one party is acting pro se must be careful, as always, to preserve the fairness of the trial, the adversary system is not suspended, and the judge cannot become the adviser or tactician for the pro se party." (Internal quotation marks omitted.) *Murray* v. *Taylor*, 65 Conn. App. 300, 311–12, 782 A.2d 702, cert. denied, 258 Conn. 928, 783 A.2d 1029 (2001).

Here, our thorough review of the transcript of the hearing does not reveal any bias against the plaintiff or for the defendant. The plaintiff, the defendant and the real estate agent who represented the parties in the sale of the marital home were the only witnesses who testified at the hearing. The plaintiff's counsel called all three individuals as his witnesses. The defendant also testified on her behalf. As the witnesses were being questioned, the court asked several questions. In the interest of ascertaining the relevant factual background in order to ensure that the matter was fully and fairly heard, the court made inquiries to clarify the responses of the various witnesses. The fact that the defendant lacked a legal education and experience, which contributed to her inability to elicit all of the information helpful to the resolution of the parties' claims, did not

preclude the court from obtaining that information in order to make a fair and impartial ruling.

"Whether or not the trial judge shall question a witness is within his sound discretion. The extent of the examination is likewise within his sound discretion. Its exercise will not be reviewed unless he has acted unreasonably, or, as it is more often expressed, abused his discretion. The judge must not exhibit bias or prejudice nor take sides." (Internal quotation marks omitted.) *LaBow* v. *LaBow*, 13 Conn. App. 330, 335, 537 A.2d 157, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). The plaintiff provides no reference to a particular question or remark by the court that demonstrates any such bias or prejudice.

Although the court may have interrupted a few of the plaintiff's objections, it was apparent that the court wanted as much information as possible concerning the parties' claims. "[I]t is often repeated in our case law that a trial court has wide discretion to determine whether to admit evidence." *Travelers Property & Casualty Co.* v. *Christie*, 99 Conn. App. 747, 758, 916 A.2d 114 (2007). When the plaintiff objected during a witness' response, the court indicated that it wanted to hear the full response. Similarly, the court permitted a witness to complete her answer when the plaintiff argued that it was outside the scope of his direct examination. There was no evidence of any favoritism, however, and the court curtailed the defendant's responses and arguments several times during the course of the hearing. The plaintiff was not limited in his questioning of any of the witnesses.

The plaintiff has not cited any evidence that demonstrates that the court was biased against him. We conclude that the court's conduct was appropriate under the circumstances and that the court did not act as the

defendant's advocate. We find no merit to the plaintiff's claim of judicial impropriety.

## II

The plaintiff next claims that the court improperly permitted the defendant's real estate agent to give opinion testimony as an expert witness without having qualified her as an expert and without any testimony as to her expertise.

The real estate agent, Carol Townsend, was called as a witness to testify by the plaintiff, not the defendant. Townsend was questioned about the first contract, alleged to have been sabotaged by the defendant, and the pending contract for the sale of the marital property. The plaintiff claims that some unspecified evidence adduced at trial was improper, but he never objected to Townsend's testimony on the ground that she was giving an expert opinion without having been disclosed as an expert or qualified as an expert. That claim is being raised for the first time on appeal.

"We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *Swerdloff* v. *Rubenstein,* 81 Conn. App. 552, 554, 841 A.2d 222 (2004). The plaintiff had ample opportunity to raise his claim in the trial court but failed to do so, and for this court now to consider such claim would amount to trial by ambuscade and would be unfair both to the trial court and to the opposing party. See id., 555. We therefore decline to review that claim.

## III

The plaintiff's final claim is that the court ordered a remedy that was contrary to the law and facts of the

case. The plaintiff argues that the court essentially found the defendant's conduct to be contemptuous, yet failed to order an appropriate sanction. An appropriate sanction, the plaintiff claims, would have been reimbursement of the mortgage payments made by the plaintiff on the marital home while the defendant was in contempt.[3]

The court did not find that the defendant was in contempt of the order in the dissolution judgment pertaining to the sale of the marital home. The plaintiff's claim, as indicated in his counsel's opening statement, was that the defendant was in contempt because she sabotaged the May, 2005 contract by insisting on an extension of the closing date. The court order of April 10, 2006, specifically states that "[t]here is no finding of sabotage."[4] "To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt." (Internal quotation marks omitted.) *Adams* v. *Adams*, supra, 93 Conn. App. 431. The ruling of the court simply cannot be construed as a finding of wilful noncompliance with a court order.

The plaintiff argues that the court would not, and legally could not, have ordered any remedy if the defendant's behavior was not found to be contemptuous. We disagree.

"[T]he trial court's continuing jurisdiction to effectuate its prior judgments, either by summarily ordering compliance with a clear judgment or by interpreting an ambiguous judgment and entering orders to effectuate the judgment as interpreted, is grounded in its inherent

---

[3] As part of the agreement incorporated in the dissolution decree, the plaintiff was ordered to pay one half of the mortgage payments on the marital home until that property was sold.

[4] The entire order of April 10, 2006, provides: "There is no finding of sabotage. Plaintiff is entitled to a $4000 credit. Parties are to split the balance equally."

powers, and is not limited to cases wherein the noncompliant party is in contempt, family cases, cases involving injunctions, or cases wherein the parties have agreed to continuing jurisdiction." *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 246, 796 A.2d 1164 (2002). "In a contempt proceeding, *even in the absence of a finding of contempt,* a trial court has broad discretion to make whole a party who has suffered as a result of another party's failure to comply with the court order." (Emphasis in original; internal quotation marks omitted.) *Clement* v. *Clement*, 34 Conn. App. 641, 647, 643 A.2d 874 (1994).

Here, as previously noted, the court order in the dissolution decree was that the marital home was to be sold as soon as possible and that the net proceeds were to be divided equally between the parties. Further, the court was to retain jurisdiction with respect to that sale. The court did not find the defendant's conduct to be contemptuous, but it did conclude that her actions had caused some delay in the sale. Accordingly, to effectuate its order, over which it had continuing jurisdiction pursuant to the dissolution decree, the court determined that the plaintiff was entitled to an additional credit.

The plaintiff appears to challenge the amount of that credit as being arbitrary or to challenge the order as being unclear as to whether the defendant's conduct was contemptuous. In that event, the plaintiff should have requested an articulation from the trial court as to that claim. See Practice Book § 66-5. "It is well settled that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . The . . . failure to seek an articulation of the trial court's decision to clarify the . . . issues and to preserve them properly for appeal leaves this court without the ability to engage in a meaningful review." (Internal quotation

marks omitted.) *Heaven* v. *Timber Hill, LLC*, 96 Conn. App. 294, 313, 900 A.2d 560 (2006).

The judgment is affirmed.

In this opinion the other judges concurred.