ROBERT E. HENRY *v.* STATEWIDE GRIEVANCE COMMITTEE
(AC 28916)

DiPentima, Harper and Lavery, Js.

Argued April 22—officially released October 28, 2008

*Susan L. Miller*, with whom, on the brief, was *Teresa O'Connell*, for the appellant (plaintiff).

*Mark A. Dubois*, chief disciplinary counsel, for the appellee (defendant).

*Opinion*

HARPER, J. The plaintiff, Robert E. Henry, a member of the bar of this state, appeals from the judgment of the trial court dismissing his appeal from the reprimand issued to him by the reviewing committee of the defendant, the statewide grievance committee, for violating rules 3.3 (a) (1) and 8.4 (4) of the Rules of Professional Conduct. The plaintiff claims that the court improperly concluded that (1) the reviewing committee did not

misapply the law when it determined that he had violated rules 8.4 (4) and 3.3 (a) (1), (2) the defendant presented sufficient evidence of violations of rules 3.3 (a) (1) and 8.4 (4), and (3) the reviewing committee did not rely on irrelevant facts in reaching its conclusions. We affirm the judgment of the trial court.

The following relevant facts are largely undisputed. Nurul Huq, a mail carrier for the United States Postal Service, allegedly was attacked and injured by a dog while delivering mail in the course of his employment. Huq filed a workers' compensation claim for this work-related injury. In connection with this claim, and at the request of Huq's employer, Philip A. Micalizzi, Jr., a physician, performed an independent medical examination of Huq. Huq later filed a negligence action against the dog's owners, Joseph Collins and Judy Collins. The Collinses retained the plaintiff to represent them in that personal injury action.

On January 8, 2004, Huq authorized the plaintiff to obtain his medical records. Later that day, the plaintiff subpoenaed Micalizzi to appear at a deposition on January 22, 2004, scheduled to take place at Micalizzi's office, and to produce at the deposition his entire file concerning the treatment of Huq. The plaintiff also sent Micalizzi a letter that day advising him that in lieu of appearing at the deposition, Micalizzi could produce the requested documents prior to the deposition date.

During the next two weeks, the plaintiff contacted Micalizzi's office on a repeated basis. Although the parties dispute precisely what transpired, as a result of these contacts, the plaintiff came to believe that Micalizzi would not be producing the requested documents,[1]

---

[1] Micalizzi had taken the position that because he had examined Huq in connection with a federal workers' compensation claim, Huq's medical records could only be released by the federal Office of Workers' Compensation Programs or its third party administrator, Medical Consultants Network.

nor would he be attending the deposition.[2] Regardless, the January 22, 2004 deposition did not occur. The plaintiff thereafter informed Micalizzi that in the absence of Micalizzi's turning over the requested documents, the court would issue a capias.

On February 10, 2004, the plaintiff presented to the Superior Court an application for a capias. He also testified before the court that same day. The following colloquy ensued:

"The Court: [Y]ou had subpoenaed a doctor that didn't show up for a deposition?

"[The Plaintiff]: That is correct, Your Honor.

"The Court: Okay. You—you're asking for a capias?

"[The Plaintiff]: I am, Your Honor.

"The Court: Okay. You may proceed.

"[The Plaintiff]: Yes, Your Honor. On January 9, process was served on [Micalizzi] . . . .

\* \* \*

"[The Plaintiff]: In-hand service for a records deposition that was to occur on January 22. [Micalizzi] did not appear for the deposition. He did not provide the records in lieu thereof. I've had numerous telephone conversations with his office in the interim, advising him that service had been made, he had an obligation to appear or, in lieu of, I would accept the records. That has not occurred at this point." The court then issued a capias, which was executed on February 17, 2004. Micalizzi subsequently filed a complaint with the

---

[2] At the plaintiff's hearing before the reviewing committee of the defendant, the plaintiff testified that he had spoken with Micalizzi on either January 21 or 22, 2004, and that Micalizzi had advised him that he would not be attending the January 22 deposition. At the same hearing, Micalizzi denied that this conversation had occurred.

defendant, which was then referred to the local grievance panel (local panel).[3]

On January 31, 2006, the local panel concluded that there existed probable cause that the plaintiff had violated rules 3.3 (a) (1),[4] 4.4 (a)[5] and 8.4 (4).[6] On August 11, 2006, the reviewing committee of the defendant issued a written decision in which it found that the plaintiff had violated rules 3.3 (a) (1) and 8.4 (4) by clear and convincing evidence and reprimanded the plaintiff.[7] On September 5, 2006, the plaintiff, pursuant to Practice Book § 2-35 (g), requested a review of the decision by the defendant. On September 22, 2006, the defendant affirmed the decision of the reviewing committee. The plaintiff appealed to the trial court, which rejected his claims and affirmed the decision of the defendant. This appeal followed.

I

The plaintiff first claims that the court improperly determined that the reviewing committee did not misapply the law in finding that he violated rules 8.4 (4) and 3.3 (a) (1). We will address each component of the plaintiff's claim in turn.

Before we do so, however, we first note that "in reviewing a decision of the statewide grievance committee to issue a reprimand, neither the trial court nor this

---

[3] The local panel reviews matters from the judicial district of New Britain and the judicial district of Hartford, geographical area number twelve, and the towns of Avon, Bloomfield, Canton, Farmington and West Hartford.

[4] Rule 3.3 (a) provides: "A lawyer shall not knowingly . . . (1) [m]ake a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer . . . ."

[5] Rule 4.4 (a) provides: "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."

[6] Rule 8.4 provides: "It is professional misconduct for a lawyer to . . . (4) [e]ngage in conduct that is prejudicial to the administration of justice . . . ."

[7] The reviewing committee also found that the plaintiff had not violated rule 4.4 (a).

court takes on the function of a fact finder. Rather, our role is limited to reviewing the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct." (Internal quotation marks omitted.) *Somers* v. *Statewide Grievance Committee*, 245 Conn. 277, 290, 715 A.2d 712 (1998).

A

We first address the plaintiff's claim that the court improperly determined that the reviewing committee did not apply an improper legal standard in concluding that he had violated rule 8.4 (4). In support of this claim, the plaintiff contends that the reviewing committee's decision states that "[t]he [plaintiff's] misrepresentation to the court was prejudicial to the administration of justice in violation of rule 8.4 (4) . . . . The [plaintiff's] misrepresentation led to the issuance of a capias . . . ." The plaintiff asserts that "misrepresentation is not the standard. 'Dishonesty, breach of trust, or serious interference' is the standard. . . . Misrepresentation is not equal to dishonesty, breach of trust, serious interference with the administration of justice, or intentional conduct."[8] (Citations omitted.) We conclude that

[8] The plaintiff also argues that the court failed to address this claim in its memorandum of decision and, in so doing, implicitly agreed with an argument offered by the defendant before that court that, in the words of the plaintiff, "finding a violation of rule 8.4 (4) is necessary when it finds a violation of rule 3.3 (a) (1) because that is the '[c]ommittee's long-standing procedure.'"

We first note that "[w]e have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court . . . ." *McGuire* v. *McGuire*, 102 Conn. App. 79, 87, 924 A.2d 886 (2007). Contrary to the plaintiff's assertion that the court failed to rule on this claim, the court simply summarily rejected the claim.

More importantly, however, the claim appears to be based on speculation as to the basis of the reviewing committee's decision. The decision is devoid of any indication that the reviewing committee applied the logic suggested by

because the plaintiff has quoted out of context this "standard" that he believes governs the application of rule 8.4 (4), his argument that the committee applied an incorrect "standard" in its analysis of rule 8.4 (4) is misplaced.

A review of rule 8.4 and its commentary will serve to illuminate our conclusion. Rule 8.4 provides in relevant part that "[i]t is professional misconduct for a lawyer to . . . (2) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects . . . (4) Engage in conduct that is prejudicial to the administration of justice . . . ."

The commentary to rule 8.4 then provides in relevant part: "Although a lawyer is personally answerable to the entire criminal law, a lawyer should be *professionally answerable* only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category." (Emphasis added.)

It is clear to us that the aforementioned commentary section applies to circumstances in which a professional misconduct prosecution has been initiated in response to a criminal act committed by an attorney. Furthermore, rule 8.4 (2), by its plain language, is the rule pursuant to which a professional misconduct prosecution would be initiated in response to a criminal act committed by an attorney. The "standard" contained in this commentary section would logically, therefore, apply to prosecutions convened pursuant to rule 8.4 (2). Consequently, we conclude that the plaintiff is

the plaintiff. Rather, the decision clearly states that the reviewing committee found a rule 8.4 (4) violation because "[t]he [plaintiff's] misrepresentation led to the issuance of a capias . . . ." Accordingly, we will review only the stated basis for the reviewing committee's determination.

incorrect in his assertion that rule 8.4 (4) violations must involve "dishonesty, breach of trust [or] serious interference with the administration of justice . . . ."

## B

We next turn to the plaintiff's claim that the court improperly determined that the reviewing committee did not apply an improper legal standard in concluding that he had violated rule 3.3 (a) (1).

The reviewing committee, in its decision, found that "[t]he [plaintiff] knowingly made a false statement of material fact to the court in violation of rule 3.3 (a) (1) by representing to the court that [Micalizzi] did not appear for the January 22, 2004 deposition. [Micalizzi] was in his office on January 22, 2004, the date and place of the scheduled deposition. . . . Neither the [plaintiff] nor a reporter appeared to take [Micalizzi's] deposition on January 22, 2004."

Rule 3.3 (a) provides: "A lawyer shall not knowingly . . . (1) [m]ake a false statement of fact or law to a tribunal . . . ." The commentary to rule 3.3 then provides in relevant part that "an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry."

The plaintiff asserts that rule 3.3 (a) (1) provides two distinct standards. He argues that the reviewing committee improperly assessed the alleged violation of rule 3.3 (a) (1) pursuant to the standard contained in the rule—whether the lawyer knowingly made a false statement—as opposed to the standard contained in the commentary to the rule—whether the lawyer believed his statement to be true on the basis of a reasonably diligent inquiry. The plaintiff then contends

that "since the [reviewing] committee used the incorrect standard to begin with, any legal conclusion the [reviewing] committee reache[d] cannot be supported."

The plaintiff, in making this argument, is in essence contending that the defendant, in prosecuting an alleged violation of rule 3.3 (a) (1), is required to prove not only that a lawyer knew his statement to be false but, furthermore, that he did not believe that statement to be true on the basis of a reasonably diligent inquiry.

We conclude, similar to our conclusion in part I A, that the plaintiff's argument that the committee applied an incorrect "standard" in its analysis of rule 3.3 (a) (1) is misplaced. We do not place the same weight on commentaries as we would place on expressed rules. The explanatory notes section in the rules of practice provides in pertinent part: "The Commentaries were prepared by the drafters of proposed amendments to the rules and are included in this volume for informational purposes only. *Commentaries are not adopted by the Judges and Justices* . . . ." (Emphasis in original.) Practice Book, explanatory notes, p. iii. Commentaries are routinely used for purposes of persuasive consideration, to guide or assist the court as to the meaning of a rule or statute or for instructive guidance to analyze an issue further. See, e.g., *W & D Acquisition, LLC* v. *First Union National Bank*, 262 Conn. 704, 716–18, 817 A.2d 91 (2003) (*Zarella, J.*, concurring) (using statute's commentary to construct meaning of term in statute); *State* v. *Courchesne*, 262 Conn. 537, 581–82, 816 A.2d 562 (2003) (discussing citation of commentaries to various statutory codifications as reliable evidence of ascertaining legislative intent); *Connecticut National Bank* v. *Giacomi*, 233 Conn. 304, 321, 341, 659 A.2d 1166 (1995) (using commentary on Uniform Securities Act [1976] to assist court in ascertaining legislative intent). The defendant applied the correct standard for rule 3.3 (a)

(1) and was not required to go beyond the clear text of the rule.

Accordingly, we conclude that the trial court properly affirmed the reviewing committee's determination that the plaintiff violated rule 3.3 (a) (1).

## II

The plaintiff next claims that the court improperly determined that the defendant presented clear and convincing evidence of violations of rules 3.3 (a) (1) and 8.4 (4). Before we address the merits of the plaintiff's claim, we first note that we review the findings challenged in attorney grievance appeals pursuant to the clearly erroneous standard of review. *Brunswick* v. *Statewide Grievance Committee*, 103 Conn. App. 601, 613, 931 A.2d 319, cert. denied, 284 Conn. 929, 934 A.2d 244 (2007). "The clearly erroneous standard of review provides that [a] court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) Id., 612. "Additionally, because the applicable standard of proof for determining whether an attorney has violated the Rules of Professional Conduct is clear and convincing evidence . . . we must consider whether the [fact finder's] decision was based on clear and convincing evidence."[9] (Citation omitted.) *Briggs* v. *McWeeny*, 260 Conn. 296, 322–23, 796 A.2d 516 (2002).

---

[9] "[C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) *Somers* v. *Statewide Grievance Committee*, supra, 245 Conn. 290–91.

A

The plaintiff claims that the court improperly determined that the defendant had produced clear and convincing evidence of a violation of rule 3.3 (a) (1). We do not agree.

To establish a violation of rule 3.3 (a) (1), the defendant bore the burden of proving, by clear and convincing evidence, that the plaintiff knowingly made a false statement of fact or law to a tribunal. Rules of Professional Conduct 3.3 (a) (1).

The reviewing committee concluded that the plaintiff "knowingly made a false statement of material fact to the court in violation of rule 3.3 (a) (1) by representing to the court that [Micalizzi] did not appear for the January 22, 2004 deposition." The plaintiff has challenged the committee's finding that he made a false statement of fact.[10]

The reviewing committee heard testimony, and found as facts, that neither the plaintiff nor a court reporter appeared at Micalizzi's office, the place where the deposition was designated to take place, on January 22, 2004. The reviewing committee also heard testimony, and also found as fact, that Micalizzi did appear at his office that day. The plaintiff concedes that the January 22, 2004 deposition thus did not occur. Yet, the plaintiff unequivocally stated to the court, at the hearing on his application for a capias, that Micalizzi failed to attend that very deposition. Although the plaintiff vehemently argues that he was under no legal obligation to establish that a deposition had been convened before a capias

---

[10] The plaintiff has also argued that "the [defendant] has not met the clear and convincing proof standard to prove that under rule 3.3 [the plaintiff] did not believe his statements to [the court] to be true based on his interactions with . . . Micalizzi." As we concluded in part I B, however, the reviewing committee was not required to make such a determination beyond the clear text of the rule.

may issue, we cannot comprehend how an individual can fail to attend a deposition that is never convened. Accordingly, we conclude that it was not clear error for the reviewing committee to have found that the plaintiff made a false statement of fact.

The plaintiff nevertheless contends that because the reviewing committee heard testimony that Micalizzi did not intend to attend the January 22, 2004 deposition, the reviewing committee could not properly have found that the plaintiff's statement that Micalizzi had not attended that deposition was false. It suffices to say that our determination in part I B that this testimony could not, as a matter of law, support a finding that the plaintiff believed his statement to be true is dispositive of the plaintiff's contention.

In sum, we conclude that the court properly determined that it was not clear error for the reviewing committee to have found that the plaintiff violated rule 3.3 (a) (1).

B

The plaintiff next claims that the court improperly determined that the defendant presented clear and convincing evidence of a violation of rule 8.4 (4). We do not agree.

To establish a violation of rule 8.4 (4), the defendant bore the burden of proving, by clear and convincing evidence, that the plaintiff "engage[d] in conduct that is prejudicial to the administration of justice . . . ." Rules of Professional Conduct 8.4 (4).

The reviewing committee, in its decision, concluded as follows: "The [plaintiff's] misrepresentation to the court was prejudicial to the administration of justice in violation of rule 8.4 (4) . . . . The [plaintiff's] misrepresentation led to the issuance of a capias . . . ."

Because Connecticut courts have yet to fashion a precise interpretation of rule 8.4 (4), we briefly digress to consider whether the grounds relied on by the reviewing committee—a misrepresentation that induces a court to take action it would not otherwise have taken—may constitute conduct that is prejudicial to the administration of justice.

We begin by noting that "rule 8.4 (4) casts a wide net over an assortment of attorney misconduct."[11] *O'Brien* v. *Superior Court*, 105 Conn. App. 774, 805, 939 A.2d 1223 (*DiPentima, J.*, concurring in part and dissenting in part), cert. denied, 287 Conn. 901, 947 A.2d 342 (2008). Furthermore, our sister states have consistently held that an attorney's mere misrepresentation to a court may result in a violation of rule 8.4 (4).

---

[11] Connecticut courts, although only occasionally considering the matter, have upheld findings of rule 8.4 (4) violations where an attorney wrote a letter accusing a judge of extorting money from his client; *Notopoulos* v. *Statewide Grievance Committee*, 277 Conn. 218, 236, 890 A.2d 509, cert. denied, 549 U.S. 823, 127 S. Ct. 157, 166 L. Ed. 2d 39 (2006); where an attorney refused to attend several criminal pretrial conferences; *Statewide Grievance Committee* v. *Whitney*, 227 Conn. 829, 830, 633 A.2d 296 (1993); and where an attorney failed to pay a judgment that had been rendered against him in a timely manner. *Daniels* v. *Statewide Grievance Committee*, 72 Conn. App. 203, 210, 804 A.2d 1027 (2002).

Our sister states have found 8.4 (4) violations under even further reaching circumstances. See, e.g., *In re Selmer*, 749 N.W.2d 30, 36 (Minn. 2008) (failure to file income tax); *State ex rel. Oklahoma Bar Assn.* v. *Whitworth*, 183 P.3d 984, 991 (Okla. 2008) (failure to appear in court on behalf of client); *North Carolina State Bar* v. *Ethridge*, 657 S.E.2d 378, 382–83 (N.C. App. 2008) (preparation and recordation of deed conveying client's property to self contrary to client's intent); *In re Abbott*, 925 A.2d 482, 486–87 (Del.) (submission of brief including inflammatory language), cert. denied sub nom. *Abbott* v. *Office of Disciplinary Counsel*, 552 U.S. 950, 128 S. Ct. 381, 169 L. Ed. 2d 263 (2007); *Attorney Grievance Commission* v. *Mba-Jonas*, 397 Md. 690, 701, 919 A.2d 669 (2007) (careless management of escrow account); *Florida Bar* v. *Barcus*, 697 So. 2d 71, 72–74 (Fla. 1997) (appeal filed solely for purpose of delaying foreclosure); *Attorney Grievance Commission* v. *Garland*, 345 Md. 383, 390, 396–97, 692 A.2d 465 (1997) (failure to appear at alcohol treatment facility in violation of court order); *Attorney Grievance Commission* v. *Singleton*, 315 Md. 1, 6, 553 A.2d 222 (1989) (failure to notify client of own suspension from legal practice).

See, e.g., *In re Tarantino*, 286 Kan. 254, 258, 182 P.3d 1241 (2008) (attorney misrepresented that he would seek to set aside default disbarment); *Attorney Grievance Commission* v. *Kreamer*, 404 Md. 282, 318–19, 946 A.2d 500 (2008) (attorney misrepresented that she had not begun representing client until three months after representation actually had began); *Florida Bar* v. *Varner*, 780 So. 2d 1, 4 (Fla. 2001) (attorney submitted to counsel for insurance company, but not to court, fictitious notice of voluntary dismissal); *In re Crumpacker*, 269 Ind. 630, 649–50, 383 N.E.2d 36 (1978) (attorney engaged in conduct prejudicial to administration of justice when he misrepresented, during closing argument, evidence that had been produced at trial), cert. denied sub nom. *Crumpacker* v. *Indiana Supreme Court Disciplinary Commission*, 444 U.S. 979, 100 S. Ct. 481, 62 L. Ed. 2d 406 (1979).

We conclude that given the wide variety of conduct to which rule 8.4 (4) has been applied and the consistency with which courts have found rule 8.4 (4) violations on the basis of a mere misrepresentation to the court, the allegation in the present case—a misrepresentation that induced the court to take action it otherwise would not have taken—constitutes conduct that is prejudicial to the administration of justice and is thus sufficient to form the basis of a violation of rule 8.4 (4).

The plaintiff contends, however, that the defendant failed to produce evidence sufficient to establish that his misrepresentation induced the court to take action it would not otherwise have taken. He argues that the reviewing committee "assume[d] that if [the plaintiff] had not 'misled' [the court], [the court] would not have issued the capias. It is the committee's burden to prove that [the plaintiff's] alleged 'misrepresentation led to the issuance of a capias.' There is not one shred of evidence that [the court] would not have issued the capias . . . ." We do not agree.

The statute that authorized the court to issue the capias, General Statutes § 52-148e (e), provides in relevant part: "If any person to whom a lawful subpoena is issued under any provision of this section *fails without excuse to comply with any of its terms*, the court before which the cause is pending . . . may issue a capias . . . ." (Emphasis added.)[12]

The subpoena, which was presented to the reviewing committee as evidence, stated in relevant part: "You are hereby commanded to appear before [the plaintiff] for the taking of your deposition to be holden at [Micalizzi's office] on the 22nd day of January A.D. 2004 . . . and you are further commanded *to bring with you and produce* at the same time and place: Your entire file concerning treatment and evaluation of . . . Huq . . . ." (Emphasis added.)

The subpoena thus provided by its very terms that compliance therewith would have required, at a minimum, appearing at the deposition. Because the subpoena clearly required that Micalizzi "bring with [him] and produce" Huq's medical records at the deposition, Micalizzi's simply producing those documents, without attending the deposition, would have been inadequate to comply with the plain terms of the subpoena. Absent the plaintiff's representation that Micalizzi failed to appear at the deposition, the court could not have concluded that Micalizzi failed to comply with the terms of the subpoena and, thus, would have been without

---

[12] The plaintiff goes to great lengths to argue that the court assessed the propriety of the reviewing committee's determination pursuant to the incorrect capias statute, General Statutes § 52-143 (e), rather than the correct capias statute, General Statutes § 52-148e (e). Because we conclude that the reviewing committee's finding of a violation was not clearly erroneous when considered pursuant to § 52-148e (e), any impropriety on the part of the court was harmless. See *Swenson* v. *Sawoska*, 215 Conn. 148, 153, 575 A.2d 206 (1990).

legal authority to issue the capias. The reviewing committee was indeed presented with evidence of this precise representation. We conclude that it was not clear error for the reviewing committee to have found, on this basis, that the plaintiff's misrepresentation led to the issuance of a capias.

Accordingly, the court did not improperly determine that the defendant presented clear and convincing evidence of a violation of rule 8.4 (4).

### III

The plaintiff finally claims that the court improperly concluded that the reviewing committee did not rely on irrelevant facts in reprimanding him. We do not agree.

The plaintiff contends that three of the reviewing committee's factual findings are irrelevant to the issue of whether the plaintiff had violated rules 3.3 (a) (1) or 8.4 (4). The plaintiff bases his claim on three statements by the reviewing committee: (1) "On or about January 13, 2004, the [plaintiff] received correspondence from the Medical Consultants Network advising the [plaintiff] that he needed to contact the Office of Workers Compensation Program's for the records because they were the 'custodians for the records' "; (2) "On February 17, 2004 at about 9 p.m. [Micalizzi] was taken from his home by four marshals and two policemen in view of his children, arrested, handcuffed and transported to jail. [Micalizzi] was released after midnight"; and (3) "The [plaintiff] indicated that he is a defendant in a pending civil lawsuit initiated by [Micalizzi] arising out of the same allegations as those set forth in the grievance complaint."

Because we concluded in parts II A and B that there was sufficient evidence for the reviewing committee to have found violations of rules 3.3 (a) (1) and 8.4 (4) absent any reliance on these allegedly irrelevant factual

findings, any impropriety in making these findings was necessarily harmless. See, e.g., *Stohlts* v. *Gilkinson*, 87 Conn. App. 634, 650, 867 A.2d 860 (court's improper reliance on facts irrelevant to claim of negligent infliction of emotional distress harmless when, even absent irrelevant facts, sufficient evidence existed to support court's finding), cert. denied, 273 Conn. 930, 873 A.2d 1000 (2005); *Ezikovich* v. *Commission on Human Rights & Opportunities*, 57 Conn. App. 767, 776, 750 A.2d 494 ("commission's discussion of the collective bargaining agreement, even if it was erroneous, was harmless because there was substantial evidence in the record to support the commission's decision. Our Supreme Court has held that [h]armless error analysis is available in the administrative context." [Internal quotation marks omitted.]), cert. denied, 253 Conn. 925, 754 A.2d 796 (2000).

The judgment is affirmed.

In this opinion the other judges concurred.