******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DEBRA COHEN *v.* STATEWIDE
GRIEVANCE COMMITTEE
(AC 40887)

Alvord, Sheldon and Bear, Js.

*Syllabus*

The plaintiff attorney appealed to the trial court from the decision of the reviewing committee of the defendant, the Statewide Grievance Committee, reprimanding the plaintiff and imposing sanctions on her for violating rules 3.3 (a) (1) and 8.4 (3) of the Rules of Professional Conduct. The plaintiff had been hired as a staff attorney for the Office of the Probate Court Administrator, while at the same time serving as a court-appointed trustee for the sole beneficiary of an estate. After filing a motion to resign as the fiduciary of the estate, a hearing was held before the Probate Court, which ordered, inter alia, that the plaintiff file a final accounting upon the resolution of any interest and penalties due in connection with state and federal tax filings. Subsequently, the plaintiff filed several final accountings with the Probate Court, some of which included fiduciary fees during the time period when she was employed by the Office of the Probate Court Administrator. Thereafter, the plaintiff filed a final accounting without fiduciary fees, which was accepted by the Probate Court. Subsequently, chief disciplinary counsel filed a grievance complaint against the plaintiff. The reviewing committee for the defendant found, by clear and convincing evidence, that the plaintiff violated rule 3.3 (a) (1) of the Rules of Professional Conduct by making a knowingly false statement in her final accounting to the Probate Court regarding fiduciary fees, as well as rule 8.4 (3) of the Rules of Professional Conduct by making a dishonest statement to the Probate Court in her final accounting regarding fiduciary fees owed. Thereafter, the defendant affirmed the decision of the reviewing committee, and the plaintiff appealed to the trial court, which dismissed the plaintiff's appeal. On the plaintiff's appeal to this court, *held:*

1. This court declined to review the plaintiff's claims that the disciplinary counsel violated her due process rights by refusing to conduct an investigation into the allegations of misconduct against her, and by failing to produce any witnesses other than the plaintiff at her hearing before the reviewing committee; the plaintiff raised those claims for the first time on appeal, she provided no analysis or citation to case law as to why the failure to investigate deprived her of her constitutional rights, or as to why disciplinary counsel's reliance on the plaintiff's testimony and documents submitted in support of the additional allegations of misconduct could not constitute clear and convincing evidence that the plaintiff's conduct violated rules 3.3 (a) (1) and 8.4 (3) of the Rules of Professional Conduct, and even if the plaintiff did set forth a constitutional claim, her claims failed under *State* v. *Golding* (213 Conn. 233) because she did not demonstrate that a constitutional violation existed.

2. The plaintiff's claim that the trial court improperly inferred an attorney-client relationship between the plaintiff and the Probate Court was moot; the reviewing committee's finding that an attorney-client relationship existed between the plaintiff and the Probate Court was made in the context of its discussion of rule 1.7 (a) (2) of the Rules of Professional Conduct, and because the reviewing committee did not find that the plaintiff violated that rule, the claim was moot.

3. The trial court properly applied rule 3.3 of the Rules of Professional Conduct to the plaintiff attorney functioning in a fiduciary role: although the plaintiff cited the commentary of the Rules of Professional Conduct to support her contention that rule 3.3 does not apply to attorneys functioning in a fiduciary role, the text of the rule, which does not contain language limiting its application to attorneys acting in the course of an attorney-client relationship, was authoritative, and this court would not import language into the rule to restrict its application to attorney-clients relationships as proposed by the plaintiff; accordingly, the trial court did not improperly expand the scope of the rule by applying it to statements made by an attorney functioning in a fiduciary role.

4. The trial court properly upheld the reviewing committee's determination that an entry in the amended final account filed by the plaintiff constituted a knowingly false statement to the Probate Court in violation of rule 3.3 (a) (1) of the Rules of Professional Conduct and was dishonest in violation of rule 8.4 (3) of the Rules of Professional Conduct; the findings of the reviewing committee, as affirmed by the defendant and the Superior Court, were supported by clear and convincing evidence that the plaintiff violated rules 3.3 (a) (1) and 8.4 (3), and were legally and logically correct and not clearly erroneous.

Argued February 6—officially released May 7, 2019

*Procedural History*

Appeal from the reprimand issued by the defendant's reviewing committee for the plaintiff's alleged violation of the Rules of Professional Conduct, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Robaina, J.*; judgment dismissing the appeal, from which the plaintiff appealed to this court. *Affirmed.*

*Debra Cohen*, self-represented, the appellant (plaintiff).

*Brian B. Staines*, chief disciplinary counsel, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, Debra Cohen, an attorney, appeals from the judgment of the trial court dismissing her appeal from the reprimand imposed by the defendant, the Statewide Grievance Committee, for her violation of rules 3.3 (a) (1) and 8.4 (3) of the Rules of Professional Conduct.[1] On appeal, the plaintiff claims that (1) disciplinary counsel violated her due process rights by refusing to conduct an investigation into the allegations of misconduct against her, (2) disciplinary counsel violated her due process rights by failing to produce any witnesses other than the plaintiff at her hearing before the reviewing committee, (3) the court improperly inferred the existence of an attorney-client relationship between the plaintiff and the Probate Court, (4) the court improperly expanded the application of rule 3.3 to an attorney functioning in a fiduciary role, and (5) the court improperly upheld the reviewing committee's determination that an entry in the amended final account filed by the plaintiff on June 24, 2013, constituted a knowingly false statement to the Probate Court in violation of rule 3.3 (a) (1) and was dishonest in violation of rule 8.4 (3). We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's claims. The plaintiff was hired as a staff attorney for the Office of the Probate Court Administrator on November 14, 2005. As an employee, her duties included court visits and assessments of the probate courts, including audits of random files, to determine whether the required accountings were timely filed and in compliance with applicable law and procedures. The plaintiff also provided support and legal advice to the Probate Court judges and their staff regarding probate matters and required filings.

At the time the plaintiff was hired by the Office of the Probate Court Administrator in 2005, she was serving as a court-appointed trustee for the sole beneficiary of the estate of John DeRosa in the North Central Probate Court (Probate Court).[2] On April 25, 2012, the plaintiff filed a proposed periodic accounting and an affidavit of fees in the DeRosa matter. On May 1, 2012, the chief clerk of the Probate Court sent an e-mail to Attorney Thomas E. Gaffey, chief counsel for the Office of the Probate Court Administrator, inquiring whether an employee of his office was precluded from serving as a fiduciary for an estate or a trust. Attorney Gaffey responded that there was no specific policy or regulation prohibiting employees from serving in a fiduciary capacity.[3] On May 18, 2012, the plaintiff filed a motion to resign as the fiduciary in the DeRosa estate with the Probate Court. Following a hearing before the Probate Court on May 23, 2012, the Probate Court judge, Timothy R.E. Keeney, issued an order requiring, inter alia,

the filing of a final account[4] upon the resolution of any interest and penalties due in connection with state and federal tax filings. Judge Keeney further noted that he would consider the plaintiff's motion to resign at the time that the final account was filed.

On April 15, 2013, the plaintiff retained Attorney Timothy Daley to represent her in the Probate Court proceedings. By letter dated April 15, 2013, Attorney Daley submitted a proposed final accounting for the DeRosa matter, which included proposed fiduciary fees for the plaintiff's services. Additionally, Attorney Daley noted the fact that the plaintiff had mistakenly failed to file income tax returns for the trust, which caused the trust to incur tax penalties in the amount of $5531.84. He stated that the plaintiff acknowledged that she had failed to file the returns on behalf of the trust in a timely manner, but that "the [f]iduciary has credit[ed] and paid back the penalties incurred by the [t]rust as set forth in the [d]ebit section of the [f]inal [a]ccounting."

A hearing on the final account was held before the Probate Court on May 15, 2013. At that hearing, the plaintiff filed an amended final account that showed a reimbursement to the estate of $5531.84 for the income tax interest and penalties, and a request for fiduciary fees in the amount of $5980 for the period of January 1, 2012, to April 22, 2013. Following the hearing, Attorney Gaffey instructed the plaintiff that she was not to request or charge fiduciary fees in any Probate Court matter for the time period that she had been employed by the Office of Probate Court Administrator.[5] Accordingly, on May 24, 2013, the plaintiff e-mailed the following message to the chief clerk of the Probate Court: "I am informing the Probate Court that I intend to file an amendment to the final account. I ask . . . the Court not to make a ruling on the account until the amendment is received. The amendment will make no entry for the payment of fees for the fiduciary and will set aside a reserve for the payment of state and federal income taxes and the cost for preparing the final income tax returns. . . ."

On June 1, 2013, the plaintiff filed an amended final account for the period of January 1, 2012, to May 31, 2013. The June 1, 2013 amended final account decreased the fiduciary's contribution to reimburse the estate for income tax interest and penalties to $4283.74, and explained the reduction in footnotes 1 and 2 of the accounting. The plaintiff noted that the Connecticut Department of Revenue Services had "granted amnesty to [the] [e]state for the 2000–2007 tax years [and] the value of the tax pardoned . . . is $1248.10." As represented in her May 24, 2013 e-mail to the Probate Court, the plaintiff did not include an entry for fiduciary fees in the June 1, 2013 amended final account.

By letter dated June 5, 2013, Judge Keeney returned the plaintiff's June 1, 2013 amended final account. He

explained in a letter that there were "several outstanding concerns," the primary concern being the reduction of the fiduciary's credit to the estate from $5531.84 to $4283.74. Judge Keeney stated: "From what has been submitted, it appears that the [Connecticut Department of Revenue Services] action is a reduction of tax obligation. Why does the accounting ask for the interest and penalties to be reduced by $1248.10 for the [s]tate for tax years 2000–2007 if there was no tax due for these years?" In a separate paragraph, Judge Keeney "duly noted" that the fiduciary fees totaling $5980 "have now been waived." Because the plaintiff claims that the court's letter was not clear and that she was confused as to the reason for the return of the June 1, 2013 amended final account, the entire contents of Judge Keeney's June 5, 2013 letter to the plaintiff is reproduced in footnote 6 of this opinion.[6] On the same day, June 5, 2013, Judge Keeney ordered and decreed: "Said accountings cannot be approved as submitted. It is, therefore, ORDERED that this hearing be adjourned until further order of the Court, AND that the fiduciary file an amended account **forthwith** correcting the errors and/or deficiencies." (Emphasis in original.)

On June 24, 2013, the plaintiff filed an amended final account for the period of January 1, 2012, to June 24, 2013. This latest accounting reflected a contribution by the fiduciary to the estate in the amount of $5531.84 for the income tax interest and penalties. The June 24, 2013 amended final account also included, however, an entry for fiduciary fees in a corresponding amount of $5531.84.[7] On July 19, 2013, the chief clerk of the Probate Court sent an e-mail to the plaintiff advising her that the court had not yet set a hearing on the June 24, 2013 amended final account because "the Judge still has some questions/concerns." Thereafter, the plaintiff revised the accounting to remove the entry for fiduciary fees, and the Probate Court approved the estate's final account on September 5, 2013.

On October 31, 2013, the Office of the Probate Court Administrator placed the plaintiff on administrative leave without pay pending a disciplinary hearing before a three judge board to determine whether the recommendation of the Probate Court Administrator to terminate the plaintiff's employment should be adopted. Following a hearing, the board issued its ruling on October 6, 2014, in which it found by clear and convincing evidence that the plaintiff's actions warranted serious discipline, and the board agreed that the plaintiff's termination from employment was an appropriate sanction.

On January 2, 2015, Patricia A. King, who was chief disciplinary counsel at the time, filed a grievance complaint against the plaintiff with the defendant. The complaint was referred to a grievance panel for the Hartford and New Britain judicial districts, which found probable

cause that the plaintiff had violated rule 1.7 (a) (2) of the Rules of Professional Conduct.[8] A hearing was scheduled before a three person reviewing committee on July 9, 2015. On June 25, 2015, the Office of Disciplinary Counsel filed "Additional Allegations of Misconduct"[9] pursuant to Practice Book § 2-35 (d).[10] The additional allegations all were directed to the plaintiff's conduct in the DeRosa matter. Disciplinary counsel alleged that the plaintiff had "committed professional misconduct in violation of [r]ules 3.3 and 8.4 (3) [of the Rules of Professional Conduct] by her refusal to adhere to Probate Court requests and orders in the [DeRosa] case," and attached seventeen documents in support of the additional allegations.

Practice Book § 2-35 (f) provides that a respondent to a grievance complaint is "entitled to a period of not less than thirty days before being required to appear at a hearing to defend against any additional charges of misconduct." Accordingly, the plaintiff's hearing before the reviewing committee was continued from July 9, 2015, to September 10, 2015. The reviewing committee conducted the hearing on September 10, 2015, and issued its decision on November 13, 2015.

In its decision, the reviewing committee found the following facts by clear and convincing evidence: (1) On May 23, 2012, Judge Keeney ordered the plaintiff to file a final accounting in the DeRosa matter upon the resolution of the interest and penalties owed in connection with the federal and state tax filings; (2) at a hearing before the Probate Court on March 7, 2013, "it was agreed that the [plaintiff] would reimburse the estate for the interest and penalties assessed due to the [plaintiff's] failure to file state and federal income taxes for the years 2000 to 2010"; (3) Attorney Daley, on behalf of the plaintiff, filed a final account on April 15, 2013, requesting approval of the plaintiff's fiduciary fees and, in an accompanying letter, acknowledged that the plaintiff's failure to timely file tax returns caused the estate to incur interest and penalties in the amount of $5531.84; (4) the April 15, 2013 final account filed by Attorney Daley showed a $5531.84 reimbursement to the estate by the plaintiff; (5) at a hearing held before the Probate Court on May 15, 2013, the plaintiff filed an amended final account, showing a reimbursement to the estate in the amount of $5531.84 for the interest and penalties due to the late tax filings and a charge to the estate in the amount of $5980 for fiduciary fees; (6) following the hearing on May 15, 2013, Attorney Gaffey directed the plaintiff not to request or charge any fiduciary fees for the time that she was employed by the Office of Probate Court Administrator; (7) on May 24, 2013, the plaintiff sent an e-mail to the chief clerk of the Probate Court stating that she would be filing an amended final accounting that would not request any fiduciary fees; (8) on June 1, 2013, the plaintiff filed an amended final account that reduced the plaintiff's contribution to the

estate for income tax interest and penalties to $4283.74; (9) as represented in her May 24, 2013 e-mail to the Probate Court, the June 1, 2013 amended final account did not claim any fiduciary fees; (10) Judge Keeney returned the June 1, 2013 amended final account to the plaintiff by letter dated June 5, 2013, instructing her to amend the accounting to reflect a $5531.84 contribution by her to the estate for the income tax interest and penalties; (11) in Judge Keeney's June 5, 2013 letter to the plaintiff, he noted that the plaintiff had waived fiduciary fees in the June 1, 2013 amended final account; (12) on June 24, 2013, the plaintiff filed an amended final account that reflected a contribution of $5531.84 by her to the estate as directed by the court, but which included claimed fiduciary fees in a corresponding amount of $5531.84; (13) on July 19, 2013, the chief clerk of the Probate Court advised the plaintiff that the June 24, 2013 accounting had not been scheduled for a hearing because the judge had some questions and concerns; (14) the plaintiff thereafter revised the final accounting to remove the claim for fiduciary fees, which the Probate Court approved on September 5, 2013; and (15) on October 6, 2014, the plaintiff was terminated from her position as staff attorney with the Office of Probate Court Administrator following a disciplinary hearing before a three judge board.

The reviewing committee further noted in its decision that the plaintiff "maintained that she was confused and made a mistake when she included a reimbursement for fiduciary fees in the June 24, 2013 [a]mended [f]inal [a]ccount. The [plaintiff] contended that all the accountings that she filed were proposed accountings subject to Probate Court approval and, therefore, could not be deemed misleading."

On the basis of the reviewing committee's factual findings, it found by clear and convincing evidence that the plaintiff had "engaged in unethical conduct." The reviewing committee concluded: "It is clear to this reviewing committee that the [plaintiff] was attempting to off-set the amount she owed to the estate for the income tax interest and penalties with her fiduciary fees. The [plaintiff] maintained that the request for fiduciary fees was a mistake. This reviewing committee does not find the [plaintiff's] statement credible, considering the fact that the amount of the fiduciary fees requested equaled the amount of interest and penalties owed to the estate by the [plaintiff]. Furthermore, the [plaintiff] is an experienced Probate Court attorney who clearly understood the directives of Judge Keeney. We find the [plaintiff's] actions were knowing, deliberate and contrary to her representation to the court in her May 24, 2013 e-mail and June 1, 2013 accounting. Accordingly, we conclude that the [a]mended [f]inal [a]ccount filed by the [plaintiff] on June 24, 2013, constituted a knowingly false statement to the Probate Court, in violation of [r]ule 3.3 (a) (1) of the Rules of Profes-

sional Conduct and was dishonest, in violation of [r]ule 8.4 (3) of the Rules of Professional Conduct."[11] After concluding that the plaintiff had violated rules 3.3 (a) (1) and 8.4 (3), the reviewing committee reprimanded the plaintiff and imposed sanctions.

Upon the plaintiff's request for review pursuant to Practice Book § 2-35 (k),[12] the defendant affirmed the decision of the reviewing committee at a meeting held on January 21, 2016. After addressing the plaintiff's arguments set forth in her request to review, the defendant concluded that "the reviewing committee's findings that the [plaintiff] violated [r]ules 3.3 (a) (1) and 8.4 (3) of the Rules of Professional Conduct are supported by clear and convincing evidence and . . . the [plaintiff's] violation of these [r]ules warrants a reprimand and an order that the [plaintiff] attend a continuing legal education course in legal ethics."

Pursuant to Practice Book § 2-38,[13] the plaintiff filed an appeal with the Superior Court. In its September 7, 2017 memorandum of decision, the court made the following determination: "The court does not find the decisions of the reviewing committee or the Statewide Grievance Committee to be clearly erroneous. There is ample support in the record to justify the findings of the [reviewing] committee that the submission of the accountings constituted a false statement to a tribunal. The [reviewing] committee was within its power to reject [the plaintiff's] assertion that the filing of the accountings was a mistake. Not coincidentally, the same assertion was made and rejected . . . in the proceeding before the . . . three judge panel of Superior Court judges. . . . The court also finds that the finding of a violation of rule 8.4 [of the Rules of Professional Conduct] is justified by the record, and is not clearly erroneous." (Internal quotation marks omitted.) The court then reviewed the reprimand imposed and found that "the reprimand falls within proper guidelines." Accordingly, the court dismissed the plaintiff's appeal. From that judgment, the plaintiff now appeals to this court.

Before considering the plaintiff's claims, we first address the standard of review applicable to grievance appeals. "[T]he clearly erroneous standard . . . is the preferable standard of review in attorney grievance appeals. . . . The clearly erroneous standard of review provides that [a] court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . .

"Additionally, because the applicable standard of proof for determining whether an attorney has violated the Rules of Professional Conduct is clear and convincing evidence . . . we must consider whether the [fact finder's] decision was based on clear and convincing

evidence. . . . [C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Citations omitted; internal quotation marks omitted.) *Chief Disciplinary Counsel* v. *Zelotes*, 152 Conn. App. 380, 386, 98 A.3d 852, cert. denied, 314 Conn. 944, 102 A.3d 1116 (2014). "The burden is on the statewide grievance committee to establish the occurrence of an ethics violation by clear and convincing proof." (Internal quotation marks omitted.) *Notopoulos* v. *Statewide Grievance Committee*, 277 Conn. 218, 226, 890 A.2d 509, cert. denied, 549 U.S. 823, 127 S. Ct. 157, 166 L. Ed. 2d 39 (2006).

I

The plaintiff's first claim is that disciplinary counsel violated her due process rights by refusing to conduct an investigation into the allegations of misconduct against her. Specifically, the plaintiff claims that King, the former chief disciplinary counsel, filed the grievance complaint against her without conducting an investigation because King enjoyed a "cordial relationship" with the Probate Court Administrator and therefore decided to wait until the investigation by the Office of Probate Court Administrator had been completed to avoid duplication of efforts. The plaintiff argues that by failing to speak to Judge Keeney, any Probate Court staff member, or the interested parties, and by neglecting to visit the Probate Court or to review that court's records, "[t]he only information in the disciplinary counsel's file is information cherry-picked and filtered by the [c]omplainant and/or his designees." Further, the plaintiff claims that the additional allegations of misconduct were "merely a repackaging of Attorney King's claim, previously dismissed by the local grievance panel . . . ."

This claim was not raised before the reviewing committee or in the plaintiff's request to review the reviewing committee's decision filed with the defendant. Further, the plaintiff failed to raise this claim in her appeal to the Superior Court or in her brief filed with the Superior Court in support of her appeal. At the hearing held on July 11, 2017, before the Superior Court, the plaintiff argued that the Office of Disciplinary Counsel abused its discretion in filing additional allegations of misconduct, but she did not argue that her constitutional right to due process had been violated by a lack of investigation into her alleged misconduct.

From this review of the record, it is clear that the

plaintiff is raising her constitutional claim for the first time in this appeal.[14] Moreover, the plaintiff's main appellate brief simply states that "[d]isciplinary counsel's decision not [to] investigate the allegations of misconduct against [the] [p]laintiff violates due process of law." There is no analysis as to why the failure to investigate deprived her of her constitutional rights. There is no citation to case law that provides that the failure to investigate under these circumstances, where the plaintiff was provided an opportunity to respond and defend herself at an evidentiary hearing, violates a respondent's due process rights. In her reply brief, the plaintiff argues for the first time that her constitutional claim is reviewable by this court pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis omitted; footnote omitted.) Id., as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). "*Golding* review is applicable in civil as well as criminal cases." *Lohnes* v. *Hospital of Saint Raphael*, 132 Conn. App. 68, 79–80, 31 A.3d 810 (2011), cert. denied, 303 Conn. 921, 34 A.3d 397 (2012).

The plaintiff argues that the record is adequate for this court's review of this claim and that a due process claim is a constitutional claim. Again, however, there is no authority cited in her reply brief to support her position that disciplinary counsel's failure to "conduct a fair and unbiased investigation into the allegations of professional misconduct levied against [the] plaintiff" violated her due process rights when she had a full evidentiary hearing before the reviewing committee and its decision subsequently was reviewed by the defendant and the Superior Court on appeal. Even if we construe the plaintiff's argument as setting forth a constitutional claim, we conclude that it fails under *Golding* because she has not demonstrated that a constitutional violation exists.

II

The plaintiff's next claim is that disciplinary counsel violated her due process rights by failing to call the complainant or any witness other than the plaintiff to testify at the grievance hearing before the reviewing committee. As with the plaintiff's first claim, she is raising this issue for the first time in this appeal. She cites no authority to support the position that disciplinary counsel's reliance on the plaintiff's testimony and

the documents submitted in support of the additional allegations of misconduct could not constitute clear and convincing evidence that the plaintiff's conduct was in violation of rules 3.3 (a) (1) and 8.4 (3) of the Rules of Professional Conduct. Even if we construe the plaintiff's argument as setting forth a constitutional claim, we conclude that it fails under *Golding* because she has not demonstrated that a constitutional violation exists.

## III

The plaintiff's next claim is that the Superior Court improperly inferred the existence of an attorney-client relationship between the plaintiff and the Probate Court. Specifically the plaintiff refers to a paragraph in the decision of the reviewing committee, in its analysis of whether the plaintiff was burdened by a conflict of interest in violation of rule 1.7 (a) (2) of the Rules of Professional Conduct, wherein it concluded that an attorney-client relationship existed between the plaintiff and the Probate Court. This determination by the reviewing committee, now challenged by the plaintiff, was raised only in connection with rule 1.7. The reviewing committee concluded, however, that the evidence in the record did not support the allegation that "there was a significant risk that the [plaintiff's] representation of the [P]robate [C]ourt was materially limited by her personal interest in receiving fees as a fiduciary." Accordingly, the reviewing committee did not find a violation of rule 1.7 (a) (2). There was no finding by the reviewing committee that the plaintiff's violation of rules 3.3 (a) (1) and 8.4 (3) occurred in the context of an attorney-client relationship between the plaintiff and the Probate Court.

In her request for review of the decision of the reviewing committee, the plaintiff raised this claim, and the defendant responded as follows: "The [defendant] concluded that the reviewing committee's finding that an [attorney-client] relationship existed between the [plaintiff] and the Probate Court was made in connection with the reviewing committee's determination that the record did not support a finding that the [plaintiff's] representation of the Probate Court constituted a conflict of interest in violation of [r]ule 1.7 (a) (2) of the Rules of Professional Conduct. Accordingly, the [defendant] found that the [plaintiff's] argument that this finding was without a legal or factual basis is moot since the reviewing committee did not find that the [plaintiff] violated this [r]ule." We agree with the defendant that this claim of the plaintiff is moot given the reviewing committee's disposition with respect to the allegation that the plaintiff violated rule 1.7 (a) (2).

## IV

The plaintiff's somewhat related claim is that an attorney-client relationship is necessary in order to find a

violation of rule 3.3 (a) (1) of the Rules of Professional Conduct, and that the court improperly expanded the application of rule 3.3 to an attorney functioning in a fiduciary role. The plaintiff raised this issue in her request for review of the reviewing committee's decision. The plaintiff referred to the *commentary* to rule 3.3, which provides in relevant part: "This [r]ule governs the conduct of a lawyer who is representing a client in the proceedings of a tribunal. . . ." Rule 3.3 (a) (1), however, contains no such limitation.

In its decision affirming the decision of the reviewing committee, the defendant addressed this claim as follows: "Contrary to the [plaintiff's] argument, [r]ule 3.3 [of the Rules of Professional Conduct] is not limited to false statements made by an attorney engaged in an [attorney-client relationship]. Rule 3.3 falls under the set of [r]ules entitled 'Advocate' and not under the [r]ules entitled 'Client-Lawyer Relationship.' In addition, the language of the [r]ule states that '[a] lawyer shall not knowingly make a false statement of fact or law to a tribunal . . . .' The [c]ommentary further clarifies that '[t]he duties stated in subsections (a) and (b) apply to all lawyers . . . .' Rule 3.3 (a) (1) clearly applies to lawyers appearing before a court in a fiduciary capacity. There is no language in the [r]ule limiting its application to only those attorneys representing a client."

The Superior Court agreed with the defendant's conclusion regarding the applicability of rule 3.3 (a) (1) of the Rules of Professional Conduct to the plaintiff's situation. The court concluded: "Further, the [defendant] reviewed the argument that [r]ule 3.3 only applies to attorneys engaged in an attorney-client relationship and/or serving as advocates. [The plaintiff's] argument in this regard is unavailing. It fails to recognize that the crux of the matter is that the reviewing committee found her actions to be 'not a mistake, but a knowingly false statement and dishonest conduct.' The limitation [the plaintiff] would impose on the rule would lead to the conclusion that an attorney could make a false statement to a tribunal under certain circumstances. There is no support in the [r]ule or in the commentary for that position. Thus the argument was properly considered and rejected."

To resolve this claim of the plaintiff, we must construe the language in rule 3.3 (a) (1) of the Rules of Professional Conduct. "Given that the Rules of Professional Conduct appear in our Practice Book, and given that [t]he interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation; *Wiseman* v. *Armstrong*, 295 Conn. 94, 99, 989 A.2d 1027 (2010); we employ our well established tools of statutory construction" to determine the meaning of the relevant language in rule 3.3 (a) (1). (Internal quotation marks omitted.) *Helmedach* v. *Commissioner of Correction*, 168 Conn.

App. 439, 459, 148 A.3d 1105 (2016), aff'd, 329 Conn. 726, 189 A.3d 1173 (2018). "The interpretation and application of a statute, and thus a Practice Book provision, involves a question of law over which our review is plenary. . . .

"The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case . . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . We recognize that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . ." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Wiseman* v. *Armstrong*, supra, 295 Conn. 99–100.

In accordance with § 1-2z, we turn to the relevant language of the rule of practice at issue, rule 3.3 (a) of the Rules of Professional Conduct, which provides in relevant part that "[a] lawyer shall not knowingly . . . (1) [m]ake a false statement of fact or law to a tribunal . . . ." This section does not contain language limiting its application to attorneys engaged in an attorney-client relationship. In reviewing other rules of professional conduct, we note, as just one example, that rule 4.1 explicitly states that "[i]n the course of representing a client a lawyer shall not knowingly . . . (1) [m]ake a false statement of material fact or law to a third person . . . ." We will not import language into the rule to restrict its application to attorney-client relationships as proposed by the plaintiff. "Where the language of the statute is unambiguous, we are confined to the intention expressed in the actual words used and we will not search out any further intention of the legislature not expressed in the statute." (Internal quotation marks omitted.) *Cornelius* v. *Arnold*, 168 Conn. App. 703, 717, 147 A.3d 729 (2016), cert. denied, 324 Conn. 908, 152 A.3d 1245 (2017).

Further, we note that rule 3.3 (a) (1) of the Rules of Professional Conduct is in the section titled "Advocate." The term "advocate" is not defined in the Rules of Professional Conduct. "The rule [is] that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . ." (Internal quotation marks omitted.) *Jamison* v. *Commissioner of Correction*, 167 Conn. App. 312, 323, 143 A.3d 1136, cert.

denied, 323 Conn. 934, 151 A.3d 383 (2016). We therefore look to the common definition expressed in dictionaries. Black's Law Dictionary defines an "advocate" as "[s]omeone who assists, defends, pleads, or prosecutes for another." Black's Law Dictionary (10th Ed. 2014). In this case, the plaintiff was appointed by the Probate Court as the trustee for the sole beneficiary of the DeRosa estate. As the trustee, the plaintiff, in a fiduciary capacity, held in trust the mortgage payments for the benefit of the estate's beneficiary. Given the language of rule 3.3 (a) (1), and the lack of language limiting its application to attorneys acting in the course of an attorney-client relationship, we conclude that the rule clearly and unambiguously applied to the statements of the plaintiff, made in her capacity as a trustee, to the Probate Court.

It is true, as indicated by the plaintiff, that the commentary to the rule provides that "[t]his [r]ule governs the conduct of a lawyer who is representing a client in the proceedings of a tribunal." Nevertheless, the preamble to the rules provides that "[t]he [c]ommentaries are intended as guides to interpretation, but the text of each [r]ule is authoritative." Case law is in accord. "We do not place the same weight on commentaries as we would place on expressed rules." *Henry* v. *Statewide Grievance Committee*, 111 Conn. App. 12, 20, 957 A.2d 547 (2008).

For these reasons, we conclude that rule 3.3 (a) (1) of the Rules of Professional Conduct is not limited to statements made in the course of attorney-client relationships, and that the court did not improperly expand the scope of the rule by applying it to statements made by an attorney functioning in a fiduciary role.

V

The plaintiff's final claim is that the court improperly upheld the reviewing committee's determination that an entry in the amended final account filed by the plaintiff on June 24, 2013, constituted a knowingly false statement to the Probate Court in violation of rule 3.3 (a) (1) of the Rules of Professional Conduct and was dishonest in violation of rule 8.4 (3) of the Rules of Professional Conduct. Specifically, the plaintiff argues that "[t]he entry of fiduciary fees on [the] [p]laintiff's June 24, 2013 proposed fiduciary account was not a false statement or dishonest; it was a true and accurate statement of services rendered at a modest hourly rate of $100." She claims that the fact that the entry may have been "inconsistent" with her statement in the May 24, 2013 e-mail to the chief clerk of the Probate Court and entries in other related fiduciary accounts filed with the Probate Court does not make the June 24, 2013 entry a misstatement or dishonest. We disagree.

We note that the plaintiff is not claiming in this appeal, as she did before the reviewing committee, the defen-

dant in her request for review, and the Superior Court, that the entry for fiduciary fees in the June 24, 2013 amended final account was made by mistake or that she had been confused as to the directives of Judge Keeney. Such a claim would not have been availing given the fact that the reviewing committee found her statement that she had been mistaken to be not credible. "[T]he committee, as the fact finder, was free to weigh the plaintiff's evidence and to determine the credibility of [the plaintiff's] testimony." *Machado* v. *Statewide Grievance Committee*, 93 Conn. App. 832, 840, 890 A.2d 622 (2006). "[A]s a reviewing court, [w]e must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude. . . . The weight to be given the evidence and to the credibility of witnesses is solely within the determination of the trier of fact." (Internal quotation marks omitted.) *Daniels* v. *Statewide Grievance Committee*, 72 Conn. App. 203, 209–10, 804 A.2d 1027 (2002).

Instead, the plaintiff takes the position that because she performed services as the fiduciary of the trust and charged reasonable fees for those services, her inclusion of those fees in the June 24, 2013 accounting cannot be deemed to be a misstatement or dishonest. The plaintiff's argument misses the point. It was not disputed that the plaintiff rendered fiduciary services or that the amount she proposed to charge was reasonable. The plaintiff, in her May 24, 2013 e-mail to the chief clerk of the Probate Court, and in various other accountings submitted to the Probate Court, represented that she would waive her fiduciary fees and remove the entry for such fees from the amended final account. Her actions were inconsistent with her representations. Further, it was apparent that her entry of $5531.84 for fiduciary fees and the credit by her to the estate for income tax interest and penalties in the amount of $5531.84, were fashioned to offset each other in the June 24, 2013 amended final account. Prior to that filing, she had either eliminated an entry for fiduciary fees or requested the amount of $5980 for her services.

Accordingly, the findings of the reviewing committee, as affirmed by the defendant and the Superior Court, are supported by clear and convincing evidence, and the conclusion that the plaintiff violated rules 3.3 (a) (1) and 8.4 (3) of the Rules of Professional Conduct by filing a knowingly false statement with the Probate Court on June 24, 2013, is legally and logically correct and not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Rule 3.3 (a) of the Rules of Professional Conduct provides in relevant part: "A lawyer shall not knowingly . . . (1) [m]ake a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer . . . ."

Rule 8.4 of the Rules of Professional Conduct provides in relevant part:

"It is professional misconduct for a lawyer to . . . (3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ."

[2] In the DeRosa estate, the heir, his daughter, could not be located. The principal asset of the estate was a mortgage on which monthly payments were made. The plaintiff had been appointed trustee for the trust created for the purpose of receiving and holding these payments for the missing beneficiary.

[3] On January 1, 2015, the Office of the Probate Court Administrator adopted a formal policy that prohibited its employees from serving as fiduciaries in Connecticut probate courts unless an employee was serving without compensation as a fiduciary on behalf of a spouse, child or parent.

[4] The terms account and accounting, as used in "final account" and "final accounting," are used interchangeably by the parties and this court.

[5] Although the exact date is in dispute, at some point in time, no later than May 16, 2013, Attorney Gaffey instructed the plaintiff to divest herself of all of her fiduciary roles in the probate courts. There is evidence in the record that the plaintiff had served as a conservator and as a limited guardian in various Probate Court matters.

[6] The letter from Judge Keeney to the plaintiff dated June 5, 2013, provides:

"Re: John DeRosa Trust

"Dear Attorney Cohen:

"The court has received your final account dated June 1, 2013. To save time and expenses, this matter should be set for a streamlined hearing. However, with your most recent submission, there are several outstanding concerns that first must be addressed.

"In the previous two final accounts submitted to the court dated May 15, 2013 and April 12, 2013, footnote [1] of each accounting states there was a Connecticut Department of Revenue Services (CT DRS) tax abatement granted for [the] 2000–2007 tax years equal to $1248.10. On the amended final account dated June 1, 2013, footnote 2 states CT DRS granted amnesty to [the] estate for 2000–2007 tax years and the amount pardoned is $1248.10. Was the action taken by CT DRS a reduction of tax obligation for the estate or was it a forgiveness of penalty and interest? From what has been submitted, it appears that the CT DRS action is a reduction of tax obligation. Why does the accounting ask for the interest and penalties to be reduced by $1248.10 for the [s]tate for [the] tax years 2000–2007 if there was no tax due for these years?

"During the March 7, 2013 hearing on the [i]nterim [a]nnual [a]ccounting, it was agreed that the fiduciary would make a contribution to the estate for any penalties and interest due because of delinquent income tax payments. In the previous two accountings filed it states that the amount paid to the [s]tate of [Connecticut] for interest and penalties for 2008–2011 was $202.35, but then a refund was received for $44.55. It also states the amount paid for [f]ederal interest and penalties for 2000–2010 was $5950.66 and a refund received for $576.62. It appears that the actual amount paid for interest and penalties for both state and federal was $6153.01 and a refund of $621.17 which would make the end total for interest and penalties for both state and federal to be $5531.84.

"During the May 15, 2013 hearing, issues related to the [f]iduciary's fees were discussed. It is duly noted that the [f]iduciary fees per [e]xhibit A of the January 1, 2012 to April 22, 2013 [a]mended [f]inal [a]ccount totaling $5980 have now been waived in the [a]mended [f]inal [a]ccount of January 1, 2012 to May 31, 2013.

"From all accounts and information supplied to the court to date it appears that the contribution amount to the [e]state by the [f]iduciary should be $5,531.84. It is for all of the above reasons that the [f]inal [a]ccount dated June 1, 2013, is being returned for further clarification and accuracy.

"Sincerely,

"Timothy R.E. Keeney

"Judge"

[7] We note that the April, 2013 final account and all of the subsequent amended final accounts submitted by the plaintiff to the Probate Court included the following representation: "The [r]epresentations contained herein are made under the penalties of false statement . . . ."

[8] Rule 1.7 (a) of the Rules of Professional Conduct provides in relevant part: "[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if . . . (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the

lawyer. . . ."

[9] An "Amended Additional Allegations of Misconduct" was filed on June 29, 2015, to correct "a typo in paragraph 2."

[10] Practice Book § 2-35 (d) provides in relevant part: "Disciplinary counsel may add additional allegations of misconduct to the grievance panel's determination that probable cause exists in the following circumstances: (1) Prior to the hearing before the Statewide Grievance Committee or the reviewing committee, disciplinary counsel may add additional allegations of misconduct arising from the record of the grievance complaint or its investigation of the complaint.. . ."

[11] The reviewing committee concluded that it was not proven by clear and convincing evidence that the plaintiff engaged in a conflict of interest in violation of rule 1.7 (a) (2) of the Rules of Professional Conduct.

[12] Practice Book § 2-35 (k) provides in relevant part: "Within thirty days of the issuance to the parties of the final decision by the reviewing committee, the respondent may submit to the Statewide Grievance Committee a request for review of the decision. . . ."

[13] Practice Book § 2-38 (a) provides in relevant part: "A respondent may appeal to the Superior Court a decision by the Statewide Grievance Committee or a reviewing committee imposing sanctions or conditions against the respondent . . . . A respondent may not appeal a decision by a reviewing committee imposing sanctions or conditions against the respondent if the respondent has not timely requested a review of the decision by the Statewide Grievance Committee under Section 2-35 (k). . . ."

[14] "Our Supreme Court has previously held that [a] party to an administrative proceeding cannot be allowed to participate fully at hearings and then, on appeal, raise claims that were not asserted before the board. We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial. . . . *Dragan* v. *Connecticut Medical Examining Board*, 223 Conn. 618, 632, 613 A.2d 739 (1992) . . . . Furthermore, [t]o allow a court to set aside an agency's determination upon a ground not theretofore presented . . . deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action." (Citation omitted; internal quotation marks omitted.) *Ogden* v. *Zoning Board of Appeals*, 157 Conn. App. 656, 665, 117 A.3d 986, cert. denied, 319 Conn. 927, 125 A.3d 202 (2015).

"Although the statewide grievance committee is not an administrative agency . . . the court's review of its conclusions is similar to the review afforded to an administrative agency decision." (Internal quotation marks omitted.) *Notopoulos* v. *Statewide Grievance Committee*, supra, 277 Conn. 227.