******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# DEBRA COHEN *v.* STATEWIDE GRIEVANCE COMMITTEE
## (SC 20356)

McDonald, D'Auria, Mullins, Ecker and Keller, Js.

*Syllabus*

The plaintiff attorney appealed to the trial court, challenging the reprimand imposed on her by the defendant, the Statewide Grievance Committee, for having violated rules 3.3 (a) (1) and 8.4 (3) of the Rules of Professional Conduct. The plaintiff, who was a court-appointed trustee of an estate, had filed an amended final accounting with the Probate Court that sought fiduciary fees for her work after she previously had represented to that court that she would waive the fees and remove them from the final accounting. The defendant upheld the determination of its reviewing committee that the amended final accounting constituted a knowingly false statement in violation of rule 3.3 (a) (1) and that the false statement also was dishonest in violation of rule 8.4 (3). The trial court dismissed the plaintiff's appeal, concluding, inter alia, that the reviewing committee's decision was not clearly erroneous and that the record supported the reviewing committee's findings of fact. The plaintiff thereafter appealed to the Appellate Court, claiming that the trial court improperly expanded the application of rule 3.3 to include attorneys functioning in a fiduciary role and improperly upheld the reviewing committee's determinations that she violated rules 3.3 (a) (1) and 8.4 (3). The Appellate Court affirmed the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Held*:

1. The plaintiff could not prevail on her claim that rule 3.3 (a) (1) did not apply to her because the Probate Court had appointed her to act as a fiduciary for an estate and the commentary to that rule indicates that it governs the conduct of a lawyer representing a client in the proceedings of a tribunal: although the commentary illustrates the most common context in which the rule would apply, that is, lawyers appearing before a tribunal in the course of client representation, there are many other contexts in which a lawyer might appear before a tribunal, and a fiduciary role is one such example; moreover, case law supported the conclusion that the commentary to rule 3.3 (a) (1) was insufficient to exempt attorneys serving as court-appointed fiduciaries, and this court would not conclude, without more evidence in the rule's text or commentary, that the drafters of the rule intended that an attorney serving as a court-appointed fiduciary was not subject to discipline for making false statements to the Probate Court when the same attorney, serving in a traditional representational capacity, would be subject to discipline for the same conduct.

2. The reviewing committee correctly concluded that the plaintiff had made a false statement in violation of rule 3.3 (a) (1); contrary to the plaintiff's claim that she did not make a false statement because the amount of the fiduciary fees listed in the accounting was accurate, the false statement at issue was not the amount of the fees claimed but her assertive conduct of including them in the amended final accounting in the context of her prior representations to the Probate Court, and, even if her statement in filing the accounting was not false within the meaning of rule 3.3 (a) (1), her failure to qualify the inclusion of the fees with some form of clarification that they had been waived amounted to an affirmative misrepresentation and, therefore, was a false statement.

3. The evidence supporting the conclusion that the plaintiff violated rule 3.3 (a) (1) was sufficient to support the reviewing committee's conclusion that her conduct was dishonest, in violation of rule 8.4 (3): the plaintiff's knowingly false statement amounted to conduct involving a lack of straightforward dealing, honesty and integrity, and, given that the plaintiff knew that the Probate Court judge considered her fiduciary fees waived, the reviewing committee did not incorrectly conclude that it was dishonest for the plaintiff to include fiduciary fees in her amended final accounting; moreover, even if the final accounting did not amount to a violation of rule 3.3 (a) (1), her course of conduct, as found by the

reviewing committee and supported by the record, was sufficient to support the conclusion that she violated rule 8.4 (3), as the plaintiff acknowledged that she sought fiduciary fees because she was otherwise unable to reimburse the estate for the tax penalties and interest she had incurred in her role as the estate's fiduciary, and the inconsistencies between the different final accountings the plaintiff had submitted to the Probate Court supported the conclusion that she was not straightforward with that court.

Argued December 7, 2020—officially released July 2, 2021*

*Procedural History*

Appeal from the decision of the defendant reprimanding the plaintiff for violation of the Rules of Professional Conduct, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Robaina, J.*; judgment dismissing the appeal, from which the plaintiff appealed to the Appellate Court, *Alvord, Sheldon* and *Bear, Js.*, which affirmed the judgment of the trial court, and the plaintiff, on the granting of certification, appealed to this court. *Affirmed.*

*Debra Cohen*, self-represented, the appellant (plaintiff).

*Brian B. Staines*, chief disciplinary counsel, for the appellee (defendant).

*Opinion*

D'AURIA, J. In this certified appeal, the plaintiff, Attorney Debra Cohen, appeals from the Appellate Court's judgment affirming the trial court's dismissal of her appeal from a reprimand the defendant, the Statewide Grievance Committee, imposed on her for violating rules 3.3 (a) (1) and 8.4 (3) of the Rules of Professional Conduct.[1] On appeal, the plaintiff claims that (1) rule 3.3 (a) (1) does not apply when, as in the present case, she was at all relevant times an attorney admitted to practice in this state but was serving as a court-appointed fiduciary, (2) the defendant incorrectly concluded that she violated rule 3.3 (a) (1) by making a "false statement," and (3) the defendant incorrectly concluded that her conduct was dishonest in violation of rule 8.4 (3). We disagree and, accordingly, affirm the judgment of the Appellate Court.

The Appellate Court's decision contains the pertinent facts and procedural history, which we summarize in relevant part. See *Cohen* v. *Statewide Grievance Committee*, 189 Conn. App. 643, 646–55, 208 A.3d 676 (2019). The plaintiff was hired as a staff attorney for the Office of the Probate Court Administrator (administrator) in 2005. Her responsibilities included auditing random Probate Court files to determine whether the required accountings complied with applicable law and procedures. At the time of her hiring, the plaintiff had been serving as a court-appointed trustee for the sole beneficiary of the estate of John DeRosa, and she continued to serve in that capacity after her employment commenced.[2] In 2012, a few days after the plaintiff had filed a proposed periodic accounting and affidavit of fees in the DeRosa matter, the chief clerk of the Probate Court asked the chief counsel for the administrator in an e-mail whether the administrator's attorneys were permitted to serve as court-appointed fiduciaries. Chief counsel for the administrator then instructed the plaintiff to resign as trustee in the DeRosa matter.

The plaintiff filed a motion to resign as the fiduciary in the DeRosa matter on May 18, 2012. Following a hearing, the Probate Court judge, Timothy R.E. Keeney, ordered the plaintiff to file a final accounting, noting in the order that he would consider the plaintiff's motion to resign when she filed the final accounting. The plaintiff thereafter filed an "Interim Account, for Filing Purposes Only."[3] Next, the plaintiff submitted a proposed final accounting, dated April 12, 2013, through her retained counsel, Attorney Timothy A. Daley. The April 12 proposed final accounting included fiduciary fees she claimed in the amount of $5980. The same day, Attorney Daley disclosed to the Probate Court that the plaintiff had failed to file income tax returns for the trust and that, as a result, the trust had incurred tax penalties in the amount of $5531.84. Attorney Daley told the Probate Court that the proposed final accounting

credited and paid back the penalties incurred as a result of the plaintiff's failure to file the required tax returns.

On May 15, 2013, during a hearing before the Probate Court, the plaintiff filed an amended final accounting, which showed a reimbursement to the estate of $5531.84 for the tax interest and penalties, and a request for fiduciary fees in the amount of $5980. Following the hearing, the chief counsel for the administrator instructed the plaintiff not to charge fiduciary fees in any Probate Court matter for the time period during which she had been employed by the administrator.

On May 24, 2013, the plaintiff e-mailed the chief clerk of the Probate Court, stating that she intended to file a second amended final accounting and that "[t]he amendment will make no entry for the payment of fees for the fiduciary and will set aside a reserve for the payment of state and federal income taxes and the cost for preparing the final income tax returns."

On June 1, 2013, the plaintiff filed an amended final accounting, which, if approved, would reduce to $4283.74 the amount she was required to reimburse the estate. The plaintiff asserted that this reduction reflected that the Department of Revenue Services "had granted amnesty to [the] [e]state for the 2000–2007 tax years [and that] the value of the tax pardoned . . . is $1248.10." (Internal quotation marks omitted.) *Cohen* v. *Statewide Grievance Committee*, supra, 189 Conn. App. 648. The plaintiff did not include an entry for fiduciary fees in the June 1 amended final accounting.

Judge Keeney did not accept the June 1, 2013 amended final accounting. In a June 5, 2013 letter to the plaintiff, Judge Keeney questioned why she sought to reduce the reimbursement she owed the estate, noting that the actual amount paid by the estate for interest and penalties for state and federal taxes was $5531.84, regardless of whether the tax obligation itself was later reduced. Judge Keeney's letter continued: "It is duly noted that the [f]iduciary fees per [e]xhibit A of the January 1, 2012 to April 22, 2013 [a]mended [f]inal [a]ccount[ing] totaling $5980 have now been waived in the [a]mended [f]inal [a]ccount[ing] of January 1, 2012 to May 31, 2013."

On June 24, 2013, the plaintiff filed another amended final accounting. This time, the amended final accounting listed a reimbursement to the estate in the amount of $5531.84 as well as an entry for claimed fiduciary fees in the identical amount of $5531.84. Thereafter, the chief clerk of the Probate Court e-mailed the plaintiff, explaining that no hearing had yet been set because "the [j]udge still has some questions/concerns." (Internal quotation marks omitted.) *Cohen* v. *Statewide Grievance Committee*, supra, 189 Conn. App. 650. On August 6, 2013, the plaintiff filed one more amended final accounting, this time removing the claimed fiduciary fees. The Probate Court approved this final

accounting on September 5, 2013.

Chief disciplinary counsel at the time, Patricia A. King, filed a grievance complaint with the defendant on January 2, 2015, alleging that the plaintiff's conduct in the DeRosa matter violated numerous provisions of the Rules of Professional Conduct.[4] The complaint alleged specifically that the plaintiff had violated rule 8.4 (3) when she "tried to substantiate her fees in the DeRosa matter by indicating to the Probate Court that her position as attorney for the [Probate Court administrator] justified, in part, her requested fee. Moreover, [the plaintiff] billed for time spent discussing the DeRosa matter with her supervisor, who was instructing her to withdraw from the matter."

A grievance panel for the Hartford and New Britain judicial districts found probable cause that the plaintiff had violated rule 1.7 (a) (2) of the Rules of Professional Conduct, and also found that the plaintiff did not violate rules 1.11, 1.3 and 8.4 (4). The panel's determination of probable cause was silent as to rule 8.4 (3). Pursuant to Practice Book § 2-35 (d),[5] the Office of Disciplinary Counsel then filed additional allegations of misconduct. Disciplinary counsel alleged that the plaintiff's "refusal to adhere to Probate Court requests and orders" in the DeRosa matter violated rules 3.3 and 8.4 (3). The additional allegations included seventeen attached documents in support of those allegations.

After a hearing at which the plaintiff testified, a reviewing committee of the defendant concluded that the plaintiff had violated rules 3.3 (a) (1) and rule 8.4 (3). Specifically, the reviewing committee concluded: "It is clear . . . that the [plaintiff] was attempting to offset the amount she owed to the estate for the income tax interest and penalties with her fiduciary fees. The [plaintiff] maintained that the request for fiduciary fees was a mistake. This reviewing committee does not find the [plaintiff's] statement credible, considering the fact that the amount of the fiduciary fees requested equaled the amount of interest and penalties owed to the estate by the [plaintiff]. Furthermore, the [plaintiff] is an experienced Probate Court attorney who clearly understood the directives of Judge Keeney. We find [that] the [plaintiff's] actions were knowing, deliberate and contrary to her representation to the court in her May 24, 2013 e-mail and June 1, 2013 accounting. Accordingly, we conclude that the amended final account[ing] filed by the [plaintiff] on June 24, 2013, constituted a knowingly false statement to the Probate Court, in violation of rule 3.3 (a) (1) of the Rules of Professional Conduct, and was dishonest, in violation of rule 8.4 (3) of the Rules of Professional Conduct." The reviewing committee reprimanded the plaintiff and ordered her to attend a continuing legal education course in legal ethics.

The defendant upheld the reviewing committee's decision after the plaintiff filed a request for review

pursuant to Practice Book § 2-35 (k).[6] The plaintiff next appealed to the Superior Court pursuant to Practice Book § 2-38, arguing in relevant part that (1) the reviewing committee's finding that the June 24, 2013 amended final accounting "constituted a knowingly false statement" to a tribunal was clearly erroneous, (2) the record did not support the reviewing committee's finding that her conduct was dishonest in violation of rule 8.4 (3), and (3) rule 3.3 is limited to attorneys engaged in an attorney-client relationship.[7] The court, *Robaina, J.*, dismissed the plaintiff's appeal, determining that the reviewing committee's decision was not clearly erroneous, the record amply supported the reviewing committee's findings of fact, and the reprimand imposed fell "within proper guidelines."

The plaintiff then appealed to the Appellate Court, claiming in relevant part that the trial court (1) improperly expanded the application of rule 3.3 to an attorney functioning in a fiduciary role, (2) improperly upheld the reviewing committee's determination that the June 24, 2013 amended final accounting constituted a knowingly false statement to the Probate Court in violation of rule 3.3 (a) (1), and (3) improperly upheld the reviewing committee's determination that the June 24, 2013 amended final accounting was dishonest in violation of rule 8.4 (3).[8] The Appellate Court affirmed the trial court's judgment. *Cohen* v. *Statewide Grievance Committee*, supra, 189 Conn. App. 666. The plaintiff petitioned for certification to appeal to this court, which we granted.[9] Additional facts will be set forth as necessary.

I

The plaintiff first claims that rule 3.3 (a) (1) does not apply because the Probate Court had appointed her to act as fiduciary for an estate. We disagree with the plaintiff and agree with the Appellate Court's well reasoned conclusion that rule 3.3 (a) (1) is not limited to statements made in the course of attorney-client relationships.

Rule 3.3 (a) provides in relevant part: "A lawyer shall not knowingly: (1) [m]ake a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer . . . ." The defendant contends that the text of the rule itself is definitive, and, therefore, consistent with General Statutes § 1-2z, we should not consider the commentary to rule 3.3 without first determining that the text of the rule is ambiguous, which, in the defendant's view, is not. The defendant argues that, because the plaintiff is a lawyer, she can be sanctioned for making a false statement to a tribunal, in this case a probate court. The plaintiff argues, on the other hand, that rule 3.3 is limited by its commentary, which provides in relevant part: "This [r]ule governs the conduct of a lawyer who is representing a client in the proceedings of a tribunal. . . ."[10] Rules of Professional Conduct

3.3, commentary. The plaintiff claims that rule 3.3 does not apply in this context because, in making the statement to the Probate Court, she was not representing a client.

The proper construction of the Rules of Professional Conduct presents a question of law over which our review is plenary. See, e.g., *Disciplinary Counsel* v. *Elder*, 325 Conn. 378, 386, 159 A.3d 220 (2017). "The legal profession is largely self-governing. Although other professions also have been granted powers of self-government, the legal profession is unique in this respect because of the close relationship between the profession and the processes of government and law enforcement. This connection is manifested in the fact that ultimate authority over the legal profession is vested largely in the courts." Rules of Professional Conduct, preamble, p. 2. The Rules of Professional Conduct are adopted by the judges of the Superior Court, not by the legislature. See *Statewide Grievance Committee* v. *Shluger*, 230 Conn. 668, 674 n.11, 646 A.2d 781 (1994) ("[t]he professional rights and obligations of attorneys practicing within Connecticut are governed by the Rules of Professional Conduct, adopted by the judges of the Superior Court in 1986"). In construing our rules of practice, which include the Rules of Professional Conduct, we have consistently applied well established principles of statutory interpretation. See, e.g., *State* v. *Heredia*, 310 Conn. 742, 755, 81 A.3d 1163 (2013); see also *Helmedach* v. *Commissioner of Correction*, 168 Conn. App. 439, 459, 148 A.3d 1105 (2016), aff'd, 329 Conn. 726, 189 A.3d 1173 (2018). However, our interpretation of the Rules of Professional Conduct, unlike our interpretation of our statutes and rules of practice, is complicated by the fact that the judges of the Superior Court have also formally adopted the commentary to the Rules of Professional Conduct. Connecticut Practice Book, explanatory notes, p. iii. To decide whether rule 3.3 (a) (1) applies to the present case, then, we must first determine the appropriate weight to give to the commentary. On this issue, the parties disagree.

Although we have not had occasion to consider whether, in construing a particular rule of professional conduct, statutory construction principles such as those embodied in § 1-2z limit our ability to consult the commentary to the rules, our precedent concerning the adoption of the Connecticut Code of Evidence by the judges of the Superior Court suggests that, when the judges have formally adopted the commentary submitted by the Rules Committee of the Superior Court, the rule "must be read together with its [c]ommentary in order for it to be fully and properly understood." (Internal quotation marks omitted.) *State* v. *DeJesus*, 288 Conn. 418, 442 n.16, 953 A.2d 45 (2008); *State* v. *Pierre*, 277 Conn. 42, 60, 890 A.2d 474 (quoting D. Borden, "The New Code of Evidence: A (Very) Brief Introduction and Overview," 73 Conn. B.J. 210, 213 (1999)), cert. denied,

547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006).[11] As with the Connecticut Code of Evidence at the time we decided *DeJesus*, the "[c]*ommentaries to the Rules of Professional Conduct . . . are adopted by the [j]udges and [j]ustices . . . .*" (Emphasis in original.) Connecticut Practice Book, explanatory notes, p. iii. Because the commentary to the Rules of Professional Conduct has been formally adopted by the judges of the Superior Court, the rules must be read together with their commentary. Thus, we agree with the plaintiff that we are not prevented from considering the commentary, even if we have not found the relevant language to be ambiguous.[12]

However, we do not agree with the plaintiff that the commentary at issue is dispositive and limits the applicability of rule 3.3 to lawyers serving in a representational capacity. According to the preface to the Rules of Professional Conduct, "[t]he [c]ommentary accompanying each [r]ule *explains and illustrates* the meaning and purpose of the [r]ule. . . . The [c]ommentaries are *intended as guides* to interpretation, but the text of each [r]ule is authoritative. Commentaries do not add obligations to the [r]ules but *provide guidance* for practicing in compliance with the [r]ules." (Emphasis added.) Rules of Professional Conduct, scope, p. 3. Therefore, although we must read the text of the rules and the commentary together, the commentary is not intended to be definitive, authoritative, or limiting but, rather, is intended to be illustrative and to guide our interpretation of the rules.

We note that the text of rule 3.3 (a) (1) itself does not indicate that it applies only to lawyers serving in a representational capacity. Nor is the pertinent language of the commentary necessarily limiting in nature. The commentary provides in relevant part that "[t]his [r]ule governs the conduct of a lawyer who is representing a client in the proceedings of a tribunal. . . ." Rules of Professional Conduct 3.3, commentary. Given the stated purpose of the commentary—to explain, illustrate and guide—a better interpretation of this commentary language is that it illustrates the most common context in which rule 3.3 would apply—lawyers appearing before a tribunal in the course of client representation. There are, however, many other contexts in which a lawyer might appear before a tribunal. A fiduciary role is one such example.[13]

Our case law also supports the conclusion that the commentary to rule 3.3 is insufficient to exempt attorneys serving as court-appointed fiduciaries. "[I]t is well established that [t]he Rules of Professional Conduct bind attorneys to uphold the law and to act in accordance with high standards in both their personal and professional lives." (Internal quotation marks omitted.) *Notopoulos* v. *Statewide Grievance Committee*, 277 Conn. 218, 231, 890 A.2d 509, cert. denied, 549 U.S. 823,

127 S. Ct. 157, 166 L. Ed. 2d 39 (2006). "Disciplinary proceedings not only concern the rights of the lawyer and the client, but also the rights of the public and the rights of the judiciary to ensure that lawyers uphold their unique position as officers and commissioners of the court." *In re Presnick*, 19 Conn. App. 340, 345, 563 A.2d 299 (citing *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo*, 190 Conn. 510, 461 A.2d 938 (1983)), cert. denied, 213 Conn. 801, 567 A.2d 833 (1989). Further, "the Rules of Professional Conduct apply to attorneys whether they are representing clients or acting as [self-represented] litigants unless the language of the rule or its relevant commentary *clearly* suggests otherwise." (Emphasis added.) *Notopoulos* v. *Statewide Grievance Committee*, supra, 231; cf. *Pinsky* v. *Statewide Grievance Committee*, 216 Conn. 228, 236, 578 A.2d 1075 (1990) (rule 4.2 of Rules of Professional Conduct, which proscribes communication between attorney and represented party, expressly applies only when attorney is representing client). Here, neither rule 3.3 nor its commentary expressly limits the application of the rule to situations in which an attorney is representing a client.[14]

The title of rule 3.3, "Candor toward the Tribunal," also lends support to the argument that the rule applies to statements made by attorneys serving as court-appointed fiduciaries before the Probate Court because it suggests that the rule seeks to protect the judiciary, not just the client. In this case, then, as a member of the Connecticut bar, the plaintiff had duties to the Probate Court itself, which had appointed her. It makes no difference that the plaintiff may not have represented any client with regard to the administration of the DeRosa estate. See *In re Speights*, 189 A.3d 205, 209 (D.C. 2018) ("a lawyer in this jurisdiction who serves as the court-appointed personal representative of an estate is held to the same ethical standards as a lawyer representing a client"). As a court-appointed fiduciary, the plaintiff's responsibilities to the Probate Court are substantially similar to the responsibilities of a lawyer representing a client before the Probate Court. Without more evidence in the rule's text or commentary, we will not conclude that the drafters of the rule intended that an attorney serving as a court-appointed fiduciary is not subject to discipline for making false statements to the Probate Court when the same attorney, serving in a traditional representational capacity, would be subject to discipline for the same conduct.

The case law the plaintiff relies on is unpersuasive and distinguishable. Although, in certain circumstances, case law from other jurisdictions can be persuasive if those jurisdictions have adopted similar provisions that are based on the same uniform act;[15] see *Friezo* v. *Friezo*, 281 Conn. 166, 187–88, 914 A.2d 533 (2007); the plaintiff cites cases that are clearly distinguishable from the present case. For example, the plain-

tiff cites cases involving lawyers who appeared in a self-represented capacity, who testified falsely in a personal capacity and who made a false report to the police in a personal capacity. See, e.g., *In re Ivy*, 350 P.3d 758, 760–61 (Alaska 2015) (false report to police alleging attorney was being stalked and assaulted by her brother); *People* v. *Head*, 332 P.3d 117, 129 (Colo. O.P.D.J. 2013) (attorney representing his own interests); *In re Disciplinary Action Against Albrecht*, 845 N.W.2d 184, 190–91 (Minn. 2014) (attorney misled legal ethics office regarding whether he had registered to take examination required for reinstatement to practice of law); *State ex rel. Oklahoma Bar Assn.* v. *Dobbs*, 94 P.3d 31, 51–52 (Okla. 2004) (attorney gave false testimony as witness in criminal proceeding against mayor).[16] Although we need not decide whether rule 3.3 can never apply in circumstances in which a lawyer clearly acts only on the lawyer's own behalf, these cases do not inform our consideration of whether rule 3.3 applies when a lawyer is acting as a fiduciary.

The plaintiff also cites *Attorney Grievance Commission* v. *Ruddy*, 411 Md. 30, 64, 981 A.2d 637 (2009), cert. denied, 562 U.S. 833, 131 S. Ct. 125, 178 L. Ed. 2d 33 (2010), arguing that "the Maryland Court of Appeals confirmed that '[rule 3.3 (a) (1) of the Maryland Rules of Professional Conduct] governs the conduct of a lawyer who is representing a client in the proceedings of a tribunal.' " The plaintiff misstates the holding of *Ruddy*, however. In that case, the attorney served as the personal representative of the estate of his aunt. Id., 39. The attorney testified that his son, who was living in the aunt's house, no longer owed rent to the estate, which was inaccurate. Id., 62–63. The court held that the attorney's conduct did not violate rule 3.3 (a) (1) not because there was no attorney-client relationship but because the attorney's false testimony was " 'not material' . . . ." Id., 64. Therefore, the court held that his failure to correct the testimony did not violate the requirement of rule 3.3 (a) (1) of the Maryland Rules of Professional Conduct that an attorney must "correct a false statement of *material* fact or law previously made to the tribunal by the lawyer . . . ." (Emphasis added; internal quotation marks omitted.) Id., 61. The court in *Ruddy* does quote the portion of the rule 3.3 commentary at issue in this case; id., 64; but *Ruddy* clearly does not hold that rule 3.3 does not apply if there is no attorney-client relationship.

We therefore hold that, in the present case, rule 3.3 (a) (1) governed the conduct of the plaintiff, a lawyer appointed by the Probate Court to serve as a fiduciary for an estate.

II

The plaintiff next claims that the reviewing committee clearly erred when it found that she made a false statement to the Probate Court in violation of rule 3.3

(a) (1).[17] Specifically, the plaintiff contends that the statement the reviewing committee found to be false was "the fiduciary account[ing] dated June 24, 2013." The plaintiff claims that this statement cannot be false because she in fact rendered fiduciary services to the estate and because the amount listed on the June 24, 2013 amended final accounting was a reasonable fee for those services.[18] The defendant contends that the reviewing committee was entitled to draw reasonable inferences from the plaintiff's various representations to determine that the June 24, 2013 amended final accounting—in the context of her prior course of conduct—amounted to a false statement within the meaning of rule 3.3 (a) (1). We agree with the defendant.

The reviewing committee's conclusion that the plaintiff made a "knowingly false statement" is a factual finding. See *Henry* v. *Statewide Grievance Committee*, 111 Conn. App. 12, 22–23, 957 A.2d 547 (2008). Factual findings of the reviewing committee are reviewed under the clearly erroneous standard. "Although the [S]tatewide [G]rievance [C]ommittee is not an administrative agency . . . the court's review of its conclusions is similar to the review afforded to an administrative agency decision." (Citation omitted.) *Weiss* v. *Statewide Grievance Committee*, 227 Conn. 802, 811, 633 A.2d 282 (1993). "The burden is on the [S]tatewide [G]rievance [C]ommittee to establish the occurrence of an ethics violation by clear and convincing proof." (Internal quotation marks omitted.) *Somers* v. *Statewide Grievance Committee*, 245 Conn. 277, 290, 715 A.2d 712 (1998). "Upon appeal, the court shall not substitute its judgment for that of the Statewide Grievance Committee or reviewing committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . ." Practice Book § 2-38 (f); see also *Notopoulos* v. *Statewide Grievance Committee*, supra, 277 Conn. 227. Finally, when we are required to interpret the Rules of Professional Conduct, our review is plenary, and the rules of statutory interpretation apply. See part I of this opinion.

Our analysis, therefore, is limited to whether the reviewing committee clearly erred when it found that the plaintiff's conduct constituted a "false statement" in violation of rule 3.3 (a) (1). We first must interpret the phrase "false statement" within the meaning of rule 3.3 (a) (1). "False statement" is not defined in the rules. We therefore look to the "commonly approved usage" of the phrase as found in dictionaries. See, e.g., General Statutes § 1-1 (a); *State* v. *Menditto*, 315 Conn. 861, 866, 110 A.3d 410 (2015). Black's Law Dictionary defines "false statement" as "[a]n untrue statement knowingly

made with the intent to mislead." Black's Law Dictionary (11th Ed. 2019) p. 1699. Black's Law Dictionary further defines "untrue" as "not correct; inaccurate." Id., p. 1851. "Statement" also is not defined in the Rules of Professional Conduct. Black's Law Dictionary defines "statement" as a "verbal assertion or nonverbal conduct intended as an assertion." Id., p. 1699.

As an initial matter, we must identify the statement at issue. The plaintiff argues that the statement is the amount of the fees listed on the amended final accounting, which she contends reflects an accurate amount and thus cannot constitute a false statement. The plaintiff misunderstands the reviewing committee's finding. As the reviewing committee's full holding makes clear, the statement at issue is the act of including the fiduciary fees in the June 24, 2013 amended final accounting in the context of her prior representations to the Probate Court. In other words, the statement is the assertive conduct of including the fees in the amended final accounting, not the amount of the fees claimed. Whether the amount the plaintiff claimed was reasonable or reflective of the actual work performed was not the point.

We next must determine whether the reviewing committee's finding that the plaintiff's statement was false is supported by clear and convincing evidence; in other words, that the statement was "untrue," "not correct," or "inaccurate." We agree with the Appellate Court that the reviewing committee correctly concluded that the plaintiff made a false statement to the Probate Court in violation of rule 3.3 (a) (1).

The reviewing committee relied on the following evidence. Prior to filing the June 24, 2013 amended final accounting, in which the plaintiff claimed fiduciary fees, the plaintiff told the Probate Court in her May 24, 2013 e-mail that she would not include the fees in her amended final accounting. In her June 1, 2013 amended final accounting, the plaintiff in fact did not include any fiduciary fees, consistent with the representation in her e-mail. In his June 5, 2013 letter to the plaintiff, Judge Keeney wrote: "It is duly noted that the [f]iduciary fees per [e]xhibit A of the January 1, 2012 to April 22, 2013 [a]mended [f]inal [a]ccount[ing] totaling $5980 *have now been waived* in the [a]mended [f]inal [a]ccount[ing] of January 1, 2012 to May 31, 2013." (Emphasis added.) After receiving Judge Keeney's letter, the plaintiff again included fiduciary fees in the June 24, 2013 amended final accounting. The reviewing committee found that the plaintiff's inclusion of the fees in the June 24, 2013 final accounting was not a mistake. In addition, the reviewing committee found that the plaintiff was attempting to offset the amount she owed to the estate for the income tax interest and penalties with her fiduciary fees.

As the Appellate Court quite aptly explained, the evi-

dence supports the conclusion that the plaintiff "represented that she would waive her fiduciary fees and remove the entry for such fees from the amended final account[ing]. Her actions were inconsistent with her representations." *Cohen* v. *Statewide Grievance Committee*, supra, 189 Conn. App. 666. Like the Appellate Court, the reviewing committee did not clearly err in concluding that, in the context of the plaintiff's prior representations, the plaintiff's June 24, 2013 amended final accounting constituted a false statement in violation of rule 3.3 (a) (1).

Even if the plaintiff's statement in filing the June 24, 2013 amended final accounting were not false within the meaning of rule 3.3 (a) (1), her failure to qualify the statement to clarify that the fees had been waived amounts to a false statement. The commentary to rule 3.3 provides that "[t]here are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation." Rules of Professional Conduct 3.3, commentary; see also *Daniels* v. *Alander*, 268 Conn. 320, 330, 844 A.2d 182 (2004) (holding that rule 3.3 (a) (1) can apply to misrepresentations that take form of failure to disclose). As the defendant noted, in the present case, the plaintiff failed to disclose to the Probate Court that the fiduciary fees had been waived when she included those fees in the actual calculation of the assets of the estate. Not only did the plaintiff include the fiduciary fees as a line item in the amended final accounting, but this line item was used in the calculation of the assets of the estate, making it appear as though the plaintiff did not owe a reimbursement for tax penalties and interest. Under these circumstances, the failure to qualify the inclusion of the fiduciary fees with some form of clarification that the fees had been waived also amounted to an affirmative misrepresentation and is therefore a false statement in violation of rule 3.3 (a) (1).

### III

Finally, the plaintiff claims that the reviewing committee clearly erred when it concluded that her conduct was "dishonest," in violation of rule 8.4 (3).[19] Under rule 8.4, "[i]t is professional misconduct for a lawyer to . . . (3) [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ." The plaintiff contends that the reviewing committee's factual findings do not support the conclusion that the June 24, 2013 amended final accounting was dishonest. The plaintiff appears to argue that, for her conduct to be dishonest, there must be evidence that her conduct actually deceived or misled the Probate Court, had the potential to induce the beneficiary of the DeRosa trust to disburse money in accordance with the June 24, 2013 amended final accounting, or that she had been disloyal to the trust or to the beneficiary. The evidence does not support a conclusion that any of these requirements were

met, the plaintiff contends, and, therefore, the amended final accounting was not dishonest. The defendant contends that the evidence that the plaintiff filed different final accountings, each of which reduced or eliminated her required contribution to the DeRosa estate, and that she did so because she did not have the funds to reimburse the estate, sufficiently supports the conclusion that her conduct was dishonest. We agree with the defendant.

The same standard of review applicable in part II of this opinion governs this claim. Dishonesty is not defined in the Rules of Professional Conduct; we therefore look to the dictionary definition of the word for its common usage. See, e.g., General Statutes § 1-1 (a); *State* v. *Menditto*, supra, 315 Conn. 866. Merriam-Webster's Collegiate Dictionary defines "dishonesty" as a "lack of honesty or integrity: disposition to defraud or deceive." Merriam-Webster's Collegiate Dictionary (11th Ed. 2011) p. 359. Black's Law Dictionary defines "dishonest" as "not involving straightforward dealing; discreditable; underhanded; fraudulent." Black's Law Dictionary, supra, p. 588.

It is not unusual for a lawyer who violates rule 3.3 (a) (1) to also violate rule 8.4 (3). See D. Richmond, "The Ethics of Zealous Advocacy: Civility, Candor and Parlor Tricks," 34 Tex. Tech L. Rev. 3, 28 (2002) ("[r]ule 3.3 (a) often overlaps with [r]ule 8.4 (c)," and "lawyer [who] violates [r]ule 3.3 (a) generally violates [r]ule 8.4 (c)"); see also *Burton* v. *Mottolese*, 267 Conn. 1, 51–52, 835 A.2d 998 (2003) (holding that trial court reasonably concluded that plaintiff violated rule 3.3 (a) (1) and that same conduct supported conclusion that plaintiff violated rule 8.4 (3)), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004). In the present case, the evidence supporting the conclusion that the plaintiff violated rule 3.3 (a) (1) is also sufficient to support the conclusion that her conduct was dishonest in violation of rule 8.4 (3). The knowingly false statement the plaintiff made amounts to conduct involving a lack of straightforward dealing, honesty, and integrity. Given that the plaintiff knew that Judge Keeney considered her fiduciary fees waived, the reviewing committee did not clearly err in concluding that it was dishonest for the plaintiff to include fiduciary fees in the June 24, 2013 amended final accounting.

Even if the plaintiff's June 24, 2013 amended final accounting was not in violation of rule 3.3 (a) (1), her course of conduct, as found by the reviewing committee and supported by the record, is sufficient to support the conclusion that she violated rule 8.4 (3). The plaintiff admitted that she sought fiduciary fees because she was otherwise unable to reimburse the estate for the tax penalties and interest she incurred in her role as the estate's fiduciary. The plaintiff had represented to the Probate Court that she would not include fiduciary

fees on her amended final accounting but, then, contrary to this representation, included them nonetheless. In her June 1, 2013 amended final accounting, the plaintiff properly excluded her fiduciary fees but improperly reduced the reimbursement she owed to the estate. In her June 24, 2013 amended final accounting, the plaintiff again included fiduciary fees but altered the amount such that they equaled, exactly, the amount she was required to reimburse the estate. The plaintiff's entire course of conduct as found by the reviewing committee, including the inconsistencies between the six final accountings she submitted to the Probate Court, supports the conclusion that she was not straightforward with the Probate Court and that she attempted to offset the amount she owed to the estate with her fiduciary fees. Such conduct is dishonest because it demonstrates a lack of integrity and a disposition to deceive.

Nevertheless, the plaintiff argues that more is required to support the conclusion that she violated rule 8.4 (3), such as evidence that the June 24, 2013 amended final accounting could have induced the beneficiary of the DeRosa trust to disburse money in accordance with the accounting or evidence that the Probate Court was actually deceived or misled by the June 24, 2013 amended final accounting. We disagree that more was required in the present case.

Rule 8.4 (3) prohibits four different types of conduct: dishonesty, fraud, deceit and misrepresentation. The plaintiff is likely correct that more evidence would be required to show that her violation of rule 8.4 (3) was based on fraud, but, here, the reviewing committee based its conclusion on the fact that her conduct was dishonest. "It is well settled that statutory interpretations that render language superfluous are disfavored . . . ." (Internal quotation marks omitted.) *Dish Network, LLC* v. *Commissioner of Revenue Services*, 330 Conn. 280, 312, 193 A.3d 538 (2018). Here, although the common meaning of the term "dishonesty" may include fraud, as defined previously, it must mean something other than fraud for the term not to be superfluous. Rule 1.0 (e) defines "fraud" as "conduct that is fraudulent under the substantive or procedural law of the applicable jurisdiction and has a purpose to deceive." Rules of Professional Conduct 1.0 (e). Under substantive law in Connecticut, the four elements of fraud are that "(1) a false representation was made . . . as a statement of fact; (2) the statement was untrue and known to be so by [the person making the statement]; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." (Internal quotation marks omitted.) *Stuart* v. *Freiberg*, 316 Conn. 809, 821, 116 A.3d 1195 (2015). "All of these ingredients must be found to exist." (Internal quotation marks omitted.) *Capp Industries, Inc.* v. *Schoenberg*, 104 Conn. App. 101, 116, 932 A.2d 453, cert. denied, 284 Conn. 941, 937

A.2d 696 (2007), and cert. denied, 284 Conn. 941, 937 A.2d 697 (2007).

Thus, if the reviewing committee had found that the plaintiff's conduct constituted fraud, she would be correct that rule 8.4 (3) requires an element of causation. The reviewing committee, however, found that the plaintiff's conduct was dishonest, not fraudulent. As such, the reviewing committee's finding of dishonesty was required to be supported by evidence that the plaintiff's conduct showed a lack of honesty or integrity, a disposition to deceive, or that it was underhanded or involved dealings that were not straightforward. As there was such evidence in the record, the reviewing committee did not clearly err in concluding that the June 24, 2013 amended final accounting was dishonest, in violation of rule 8.4 (3).

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* July 2, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Rule 3.3 (a) of the Rules of Professional Conduct provides in relevant part: "A lawyer shall not knowingly:

"(1) [m]ake a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer . . . ."

Rule 8.4 of the Rules of Professional Conduct provides in relevant part: "It is professional misconduct for a lawyer to:

* * *

"(3) [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ."

[2] The heir to the DeRosa estate could not be located. The principal asset of the estate was a mortgage on which monthly payments were made. The plaintiff had been appointed trustee for the trust created for the purpose of receiving and holding these payments for the missing beneficiary.

[3] The "Interim Account, for Filing Purposes Only," did not reimburse the estate for any interest or penalties owed for taxes and did not claim any fiduciary fees.

[4] King's grievance complaint alleged violations of rules 1.3, 1.7 (a) (2), 1.11 (d) (1), 1.11 (d) (2) (i), 8.4 (1), 8.4 (3) and 8.4 (4) of the Rules of Professional Conduct. The complaint also alleged additional violations of the rules regarding several other matters in which the plaintiff served as a fiduciary.

[5] Practice Book § 2-35 (d) provides in relevant part: "Disciplinary counsel may add additional allegations of misconduct to the grievance panel's determination that probable cause exists in the following circumstances:

"(1) Prior to the hearing before the Statewide Grievance Committee or the reviewing committee, disciplinary counsel may add additional allegations of misconduct arising from the record of the grievance complaint or its investigation of the complaint. . . ."

[6] Practice Book § 2-35 (k) provides in relevant part: "Within thirty days of the issuance to the parties of the final decision by the reviewing committee, the respondent may submit to the Statewide Grievance Committee a request for review of the decision. . . ."

[7] Practice Book § 2-38 (a) provides in relevant part: "A respondent may appeal to the Superior Court a decision by the Statewide Grievance Committee or a reviewing committee imposing sanctions or conditions against the respondent, in accordance with Section 2-37 (a). . . ."

[8] The plaintiff additionally claimed that (1) disciplinary counsel violated her due process rights by refusing to conduct an investigation into the allegations of misconduct against her, (2) disciplinary counsel violated her due process rights by failing to produce any witnesses other than the plaintiff at her hearing before the reviewing committee, and (3) the court improperly inferred the existence of an attorney-client relationship between the plaintiff and the Probate Court. The plaintiff did not petition for certification to

appeal as to these issues.

[9] We granted certification, limited to the following issues: (1) "Did the Appellate Court correctly conclude that rule 3.3 (a) (1) of the Rules of Professional Conduct, which provides that '[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal,' applies when the lawyer makes the statement while acting in a capacity other than as a lawyer representing a client?" And (2) "[d]id the Appellate Court correctly conclude that the entry for fiduciary fees made by the plaintiff in the amended final accounting constituted a knowingly false statement within the meaning of rules 3.3 (a) (1) and 8.4 (3) of the Rules of Professional Conduct?" *Cohen* v. *Statewide Grievance Committee*, 333 Conn. 901, 214 A.3d 381 (2019).

Upon review of the record and the briefs of the parties, and after due consideration of the claims raised by the parties at oral argument before this court, we conclude that the second certified issue is not an adequate statement of the issue presented. Specifically, the second certified issue does not conform to the issue actually presented and decided in the appeal to the Appellate Court. See, e.g., *State* v. *Ouellette*, 295 Conn. 173, 183–85, 989 A.2d 1048 (2010). We therefore consider whether the entry for fiduciary fees made by the plaintiff in the amended final accounting constituted a knowingly false statement within the meaning of rule 3.3 (a) (1) and was dishonest within the meaning of rule 8.4 (3).

[10] The commentary to rule 3.3 also provides in relevant part: "[Rule 3.3] also applies when the lawyer is representing a client in an ancillary proceeding conducted pursuant to the tribunal's adjudicative authority, such as a deposition. . . ." Rules of Professional Conduct 3.3, commentary.

[11] Although *DeJesus* concerned our construction of the Connecticut Code of Evidence and not the Rules of Professional Conduct, when we decided *DeJesus*, the Connecticut Code of Evidence had been promulgated in the same way the Rules of Professional Conduct are promulgated today, with the commentary adopted by the judges of the Superior Court. See *State* v. *DeJesus*, supra, 288 Conn. 442 n.16; see also Connecticut Practice Book, explanatory notes, p. iii. We therefore look to *DeJesus* for guidance.

[12] Because the commentary to the Rules of Professional Conduct is formally adopted by the judges of the Superior Court, we have no occasion to examine a question we have not closely examined before: whether, in general, § 1-2z applies to the rules of practice or to the Rules of Professional Conduct. But see *Wiseman* v. *Armstrong*, 295 Conn. 94, 100, 989 A.2d 1027 (2010) (reviewing language of rules of practice "[i]n accordance with § 1-2z").

[13] Other examples might include lawyers making representations to a tribunal while serving as a guardian ad litem, conservator, and committee for sale in a foreclosure matter.

[14] The facts of this case do not present, and we therefore do not decide, the issue of whether rule 3.3 (a) (1) applies to attorneys representing themselves before a tribunal.

[15] Connecticut's Rules of Professional Conduct, like the analogous rules of many other jurisdictions, are adapted from the American Bar Association's Model Rules of Professional Conduct. See, e.g., *Briggs* v. *McWeeny*, 260 Conn. 296, 299 n.3, 796 A.2d 516 (2002).

[16] In addition, one case on which the plaintiff relies, *Taurus IP, LLC* v. *DaimlerChrysler Corp.*, 726 F.3d 1306, 1346 (Fed. Cir. 2013), involves rule 3.3 (b) of the Michigan Rules of Professional Conduct, which is substantively different from Connecticut's rule 3.3 (a) (1). Michigan's rule 3.3 (b) provides: "If a lawyer knows that the lawyer's client or other person intends to engage, is engaging, or has engaged in criminal or fraudulent conduct related to an adjudicative proceeding involving the client, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." Michigan Rules of Professional Conduct 3.3 (b).

[17] The plaintiff does not argue that she did not knowingly include the fiduciary fees, and she cannot, because the reviewing committee found her statement that she included the fees by mistake to be not credible. "An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Internal quotation marks omitted.) *Notopoulos* v. *Statewide Grievance Committee*, supra, 277 Conn. 227. We therefore defer to the reviewing committee's determination that the plaintiff's statement was made knowingly and consider only whether the plaintiff made a false statement.

[18] In fact, the reviewing committee made no findings as to the reasonable-

ness of the fees included in the June 24, 2013 final accounting.

[19] As discussed in footnote 9 of this opinion, the certified issue did not specifically ask the parties whether the plaintiff's conduct was dishonest. However, this is a more accurate statement of the certified issue, and both parties adequately briefed that issue.

———————————————